## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| |
|---|
| CAPTAIN ALBERT BROX, et al., |
| Plaintiffs, |
| v. |
| THE WOODS HOLE, MARTHA'S VINEYARD, AND NANTUCKET STEAMSHIP AUTHORITY, et al., |
| Defendants. |

Civil Action No. _____

TO:   The Honorable Judges of the
      United States District Court
      District of Massachusetts

## <u>NOTICE OF REMOVAL</u>

Petitioners The Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, and Janice Kennefick, in her official capacity as Director of Human Resources at The Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, Defendants in the above-entitled action, state as follows:

1.      Defendants desire to exercise their rights under the provisions of 28 U.S.C. § 1441, *et seq.*, to remove this action from the Superior Court for Barnstable County, Massachusetts, in which said case is now pending under the name and style, *Captain Albert Brox, et al. v. The Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, et al.*, Civil Docket No. 2272-CV-00049 (the "State Court Action").

2.      A copy of the Summons and Verified Complaint for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief, and Declaratory Relief (the "Complaint") was served on Defendants on February 11, 2022.  Defendants are filing this Notice within thirty (30)

days of Defendants' receipt of the Complaint and Summons, as required by 28 U.S.C. § 1446(b)(1). A copy of the Summons, Complaint, and all other papers received in this case to date, including Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order ("Motion"), are attached hereto as Exhibit A.

3.      Defendants have not yet answered, moved, or otherwise responded to the Complaint or Motion in the State Court Action.

4.      Pursuant to 28 U.S.C. § 1441(a), any civil action brought in a state court which the district courts of the United States have original jurisdiction may be removed by the Defendants to the district court of the place where such action is pending.

5.      Pursuant to 28 U.S.C. § 1331, the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

6.      This Court has federal question jurisdiction over this case because Plaintiffs have alleged "a violation of the First Amendment, as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983" against Defendants in Count Two of the Complaint, as well as "a violation of the Plaintiffs' right to privacy, personal autonomy, and personal identity under the Fourteenth Amendment to the Constitution of the United States" for which Plaintiffs seek remedies pursuant to 42 U.S.C. §§ 1983 and 1988 in Count Four of the Complaint.

7.      This Court has supplemental jurisdiction over the remaining Counts in the Complaint pursuant to 28 U.S.C. § 1367 because they are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

8.      Venue is proper in this District under 28 U.S.C. § 1446(a) because this District and Division embraces Barnstable County, Massachusetts, where this action is currently pending in the Commonwealth of Massachusetts Superior Court.

9.      Defendants will promptly file a Notice of Filing of Removal of Action to Federal Court (attached hereto as <u>Exhibit B</u>) and a copy of this Notice of Removal with the Clerk of the Superior Court, Barnstable County, Commonwealth of Massachusetts, where this action has been pending, pursuant to 28 U.S.C. § 1446(d).

10.     Defendants will serve written Notice to Plaintiffs' Counsel of Filing of Removal of Action to Federal Court (attached hereto as <u>Exhibit C</u>) and copies of this Notice of Removal on Plaintiffs' counsel pursuant to 28 U.S.C. § 1446(d).

11.     Pursuant to Local Rule 81.1(a), Defendants will obtain certified or attested copies of the docket sheet and all pleadings in the state court action and will file them in this Court within twenty-eight (28) days.

12.     For the reasons stated above, this action is removable to this Court pursuant to the provisions of 28 U.S.C. § 1441.

13.     By filing this Notice of Removal, Defendants are not making a general appearance and are not waiving any defenses and/or grounds for dismissal that may be available to it pursuant to Rule 12 of the Federal Rules of Civil Procedure and/or any other applicable rules, including, but not limited to, those related to service of process, sufficiency of process, venue, or jurisdiction. Defendants specifically reserve the right to assert any defenses and/or objections to which it may be entitled.

Respectfully submitted,

DEFENDANTS

THE WOODS HOLE, MARTHA'S
VINEYARD AND NANTUCKET
STEAMSHIP AUTHORITY, AND JANICE
KENNEFICK, IN HER OFFICIAL
CAPACITY AS DIRECTOR OF HUMAN
RESOURCES AT THE WOODS HOLE,
MARTHA'S VINEYARD AND
NANTUCKET STEAMSHIP AUTHORITY

By their Attorneys,

*/s/ Ryan W. Jaziri*
Keith H. McCown (BBO #322980)
kmccown@morganbrown.com
Ryan W. Jaziri (BBO #681512)
rjaziri@morganbrown.com
Jeffrey T. Collins (BBO #640371)
jcollins@morganbrown.com
MORGAN, BROWN & JOY, LLP
200 State Street, 11th floor
Boston, MA  02109
T: (617) 523-6666
F: (617) 367-3125

Dated:  February 14, 2022

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel for
Plaintiff via e-mail and first-class U.S. mail on February 14, 2022 at:

Patrick K. Daubert, Esq. (BBO #694802)
Daubert Law, PLLC
100 Independent Drive
Suite 7-591
Hyannis, MA 02601
DaubertLaw@iCloud.com

*/s/ Ryan W. Jaziri*
Ryan W. Jaziri

4

# Exhibit A

| **SUMMONS AND ORDER OF NOTICE** | DOCKET NUMBER<br><br>2272CV00049 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>**Captain Albert Brox et al vs. THE WOODS HOLE, MARTHAS** ~~**VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY et al**~~ | Scott W. Nickerson, Clerk of Court<br>Barnstable County |
|---|---|
| To:<br>**THE WOODS HOLE, MARTHAS VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY** | COURT NAME & ADDRESS<br>Barnstable County Superior Court<br>3195 Main Street<br>Barnstable, MA 02630 |

To the above named defendant(s):

        You are hereby summoned and required to serve upon:

                **Patrick K Daubert, Esq.**
                **Daubert Law, PLLC**
                **100 Independence Drive Suite 7 591**
                **Hyannis, MA 02601**

        an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Barnstable either before service upon plaintiff's attorney or within a reasonable time thereafter.

        Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application for a Temporary Restraining Order  Defendants are enjoined from enforcing their "COVID-19 Vaccination Verification Policy" against Plaintiffs or taking any adverse action against Plaintiffs because of their vaccination status, has been made in said action, as it appears in the complaint. A hearing on this matter has been scheduled for:

                        **Date: 02/15/2022**

                        **Time: 02:00 PM**

                        **Event: Hearing on Preliminary Injunction**

                **Session Location: Second Session /  Courtroom 2**

at which time you may appear and show cause why such application should not be granted.

| DATE ISSUED<br>2:41 p.m.<br>**02/11/2022** | CHIEF JUSTICE OF THE SUPERIOR COURT<br>Witness:<br>**Hon. Heidi E Brieger** | ASSOCIATE JUSTICE<br><br>**Hon. Thomas J Perrino** | ASSISTANT CLERK<br>X _Christine Pipilellan_ |
|---|---|---|---|

| **RETURN OF SERVICE** |
|---|

I hereby certify and return that on ___2/11/2022___, I served a copy of this summons, together with a copy of the Complaint.

                                                                PARTY NAME:
                                                          X

LUIZ GONZAGA
Constable

SCV02h 04/2017

Date/Time Printed: 02-11-2022 15.09.35

| **SUMMONS AND ORDER OF NOTICE** | DOCKET NUMBER<br>**2272CV00049** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>**Captain Albert Brox et al vs. THE WOODS HOLE, MARTHAS**<br>~~VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY et al~~ | Scott W. Nickerson, Clerk of Court<br>Barnstable County |
|---|---|
| To:<br>**Janice Kennefick In his/her capacity As Director of Human Resources for Woods Hole, Marthas Vineyard and Nantucket St** | COURT NAME & ADDRESS<br>Barnstable County Superior Court<br>3195 Main Street<br>Barnstable, MA 02630 |

To the above named defendant(s):

      You are hereby summoned and required to serve upon:

            **Patrick K Daubert, Esq.**
            **Daubert Law, PLLC**
            **100 Independence Drive Suite 7 591**
            **Hyannis, MA 02601**

      an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Barnstable either before service upon plaintiff's attorney or within a reasonable time thereafter.

      Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application for a Temporary Restraining Order  Defendants are enjoined from enforcing their "COVID-19 Vaccination Verification Policy" against Plaintiffs or taking any adverse action against Plaintiffs because of their vaccination status, has been made in said action, as it appears in the complaint. A hearing on this matter has been scheduled for:

              **Date: 02/15/2022**

              **Time: 02:00 PM**

              **Event: Hearing on Preliminary Injunction**

         **Session Location: Second Session / Courtroom 2**

at which time you may appear and show cause why such application should not be granted.

| DATE ISSUED<br>2:41 p.m.<br>**02/11/2022** | CHIEF JUSTICE OF THE SUPERIOR COURT<br>Witness:<br>**Hon. Heidi E Brieger** | ASSOCIATE JUSTICE<br>**Hon. Thomas J Perrino** | ASSISTANT CLERK<br>X _(signature)_ |
|---|---|---|---|

**RETURN OF SERVICE**

I hereby certify and return that on  2/11/2022 , I served a copy of this summons, together with a copy of the Complaint.

PARTY NAME:

X _(signature)_

LUIZ GONZAGA
CANSTABLE

Date/Time Printed: 02-11-2022 15:09:35

SCV02h 04/2017

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT
SUPERIOR COURT

SUPERIOR COURT
BARNSTABLE, SS

FEB 1 1 2022

FILED
Scott W. Nickerson, Clerk

BARNSTABLE, SS

DOCKET NO.

|  |  |  |
|---|---|---|
| CAPTAIN ALBERT BROX et al., | ) | 2/11/22  Allowed |
| Plaintiffs | ) | Scott W. Nickerson |
| v. | ) | (Clerk-Magistrate |
| THE WOODS HOLE, MARTHA'S VINEYARD, AND NANTUCKET STEAMSHIP AUTHORITY et al., | ) |  |
| Defendants | ) |  |

## PLAINTIFFS' MOTION TO APPOINT SPECIAL PROCESS SERVER

NOW COME the Plaintiffs, Captain Albert Brox et al., and hereby move this Honorable

Court to appoint a special process server, pursuant to the provisions of Rule 4(c) of the

Massachusetts Rules of Civil Procedure, namely, Barnstable Constable Luis Gonzaga, 16 School

St., Hyannis, MA 02601 and P.O. Box 52, Barnstable, MA 02630; Telephone: (508) 815-9994

and Facsimile: (774) 470-2453; or his authorized agents as Special Constable(s)/Process

Server(s) in the above action.

In support of this request, the undersigned swears to the best of his knowledge and belief

that the person to be appointed as Special Constable/Process Server is experienced in the service

of Civil Process, is 18 years of age or older and not a party in this action to be specially

appointed by the Court to serve process, to wit, the Verified Complaint, *Ex-Parte* Motion for

Temporary Restraining Order and Memorandum in Support thereof, any and all other pleadings

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT
SUPERIOR COURT

BARNSTABLE, SS                                    DOCKET NO.

| | |
|---|---|
| CAPTAIN ALBERT BROX, KIM FERNANDES, JAMES BONDAREK, ANDREA SHEEDY, PAUL MENTON, CHRISTOPHER OVASKA, MARK ANDERSON, TIMOTHY RICHARDSON, STEVEN ENNIS, SONIA SIMONEAU, and JEFFERY D'AMARIO, <br>                 Plaintiffs <br>   <br> v. <br> THE WOODS HOLE, MARTHA'S VINEYARD, AND NANTUCKET STEAMSHIP AUTHORITY, and JANICE KENNEFICK, in her official capacity as Director of Human Resources Hole, Martha's Vineyard, and Nantucket Steamship Authority, <br>                 Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF

**NOW COME** the above-named Plaintiffs, by and through their undersigned counsel, and together bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, accompanied by a Motion requesting this Honorable Court's issuance of a temporary restraining order pursuant to Massachusetts Rules of Civil Procedure Rule 65, which enjoins Defendants from terminating Plaintiffs' employments *en masse* on February 16, 2022, and prohibits Defendants from taking further adverse action against Plaintiffs pursuant to their vaccine mandate policy, as described in greater detail herein, until such a time as Plaintiffs may be heard on the merits of their requests and Defendants in opposition thereto.

In the words of the late virologist Dr. Luc Montagnier, who won the 2008 Nobel Prize in Medicine for his discovery of the human immunodeficiency virus, and Yale Law School Professor Jed Rubenfeld: "It would be irrational, legally indefensible and contrary to the public interest for government to mandate vaccines absent any evidence that the vaccines are effective in stopping the spread of the pathogen they target."[1]

In support of this Complaint, Plaintiffs allege the following upon information and belief:

## INTRODUCTION

1.     This case seeks to protect and vindicate statutory and fundamental constitutional rights. Plaintiffs bring this civil rights action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for other statutory and constitutional violations, including of the Constitution of the Commonwealth of Massachusetts and Declaration of Rights of the Inhabitants thereof, challenging Defendants' acts, policies, practices, customs and procedures, which deprived Plaintiffs of their First Amendment rights, their rights to Due Process, and their Fourteenth Amendment rights to liberty, privacy, self-autonomy and personal identity, including the right to reject government mandated medical treatment.

2.     Defendants unjustly discriminate against Plaintiffs because of their sincerely held religious beliefs and convictions by mandating that they must take a COVID-19 vaccine as a condition of continued employment. Specifically, Defendants' vaccine mandate seeks to override

---

[1] See "Omicron Makes Biden's Vaccine Mandates Obsolete: There is no evidence so far that vaccines are reducing infections from the fast-spreading variant" as published in The Wall Street Journal on January 9, 2022. https://www.wsj.com/articles/omicron-makes-bidens-vaccine-mandates-obsolete-covid-healthcare-osha-evidence-supreme-court-11641760009.

Plaintiffs' sincerely held religious beliefs, convictions and viewpoints and discriminates against them on the basis of their religions.

3.      As set forth in this Complaint, the policies, practices, customs and procedures of Defendants were the cause of, and the moving force behind, the statutory and constitutional violations in this case.

4.      Plaintiffs seek:

    A. injunctive relief enjoining the unconstitutional application of Defendants' policies, practices, customs and procedures, relating to their vaccine mandate, as set forth in this Complaint, all with a temporary restraining order, preliminary and permanent injunction;

    B. a declaration that Defendants violated Plaintiffs' clearly established statutory and constitutional rights;

    C. an award of nominal damages;

    D. an award of compensatory damages;

    E. an award of punitive damages;

    F. an award of Plaintiffs' back pay; and

    G. an award of Plaintiffs' reasonable costs of litigation, including attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and other applicable law.

## PARTIES

### Plaintiffs

5.      Albert Brox is a resident of Barnstable County in the Commonwealth of Massachusetts and an employee of the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority for

over 32 years, who is employed as the Sr. Captain of the MV Iyanough. Captain Brox has held the rank of Captain since at least 1992.

6.    Kim Fernandes is a resident of Barnstable County in the Commonwealth of Massachusetts and an employee of the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority for over 29 years, who is employed as a Parking Lot Cashier.

7.    James Bondarek is a resident of Barnstable County in the Commonwealth of Massachusetts and an employee of the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority for over 32 years, who is employed as a Purser.

8.    Andrea Sheedy is a resident of Barnstable County in the Commonwealth of Massachusetts and an employee of the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority for over 25 years, who is employed as a Ticket Seller.

9.    Paul Menton is a resident of Barnstable County in the Commonwealth of Massachusetts and an employee of the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority for over 24 years, who is employed as a Pilot.

10.    Christopher Ovaska is a resident of Barnstable County in the Commonwealth of Massachusetts and an employee of the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority for over 7 years, who is employed as a Terminal Worker.

11.    Mark Anderson is a resident of Bristol County in the Commonwealth of Massachusetts and an employee of the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority for over 4 years, who is employed as a Pilot.

12. Tim Richardson is a resident of Barnstable County in the Commonwealth of Massachusetts and an employee of the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority for over 4 years, who is employed as an Oiler.

13. Steven Ennis is a resident of Plymouth County in the Commonwealth of Massachusetts and an employee of the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority for over 1 year, who is employed as an Oiler.

14. Sonia Simoneau is a resident of Barnstable County in the Commonwealth of Massachusetts and an employee of the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority for over 24 years, who is employed as a Ticket Seller.

15. Jeffery D'Amario is a resident of Barnstable County in the Commonwealth of Massachusetts and an employee of the Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority for over 32 years, who is employed as a Ticket Seller.

16. Plaintiffs Brox, Fernandes, Bondarek, Sheedy, Menton, Ovaska, Anderson, Simoneau, Richardson and Ennis are Christians who adhere to the teachings of the Bible and are morally bound to follow the universal, consistent moral teaching of the Christian faith. Plaintiffs find their dignity, personal identity, and autonomy in the exercise of their sincerely held religious beliefs. Plaintiffs are devoted Christian people who sincerely believe the Bible's teachings and sincerely hold Christian beliefs that preclude them from taking the available COVID-19 vaccines.

17. Plaintiff D'Amario practices nature worship, which has taught him to be skeptical of conventional practices regarding diet and allopathic medical treatments. D'Amario sincerely believes his worship of nature, his practice of vegetarianism, and his use of natural, homeopathic

medicines and remedies keep him healthy. These sincere beliefs preclude him from taking the available COVID-19 vaccines.

18.     Plaintiffs do not oppose or demean any person for the personal medical decisions he or she makes. Plaintiffs oppose one-size-fits-all medical mandates now being forced upon them by their employer on pain of losing their employment, and the resulting violation of Plaintiffs' statutory and constitutional rights.

19.     Plaintiffs are all willing to take other preventative measures, such as weekly testing, masking, etc., and other such reasonable accommodations required or requested by Defendants.

20.     Plaintiff Ennis submitted to the COVID-19 vaccination procedure following the denial of his requests for religious and medical exemption and reasonable accommodation and after his placement on unpaid suspension. Ennis submitted to the vaccine in violation of and direct opposition to his sincerely held religious beliefs, causing him irreparable harm. Ennis suffered an adverse neurological reaction, which he is currently treating with the help of his physician.

### Defendants

21.     The Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority (the "Authority") is a public instrumentality of the Commonwealth of Massachusetts, according to its enabling act legislation (chapter 701 of the Acts of 1960), which has a principal office located at 228 Palmer Avenue, Falmouth, Barnstable County, Commonwealth of Massachusetts, and is an employer within the meaning of G.L. 151B, § 1(5). The Authority consists of five appointed members (the "Governing Board") who are, at present, as follows: Moira Tierney, Board Chair; Robert Ranney, Board Vice Chairman; Robert Jones, Board Secretary; James Malkin, Board Member; and Peter Jeffrey, Board Member.

22.     Janice Kennefick is the Director of Human Resources of The Woods Hole, Martha's Vineyard, and Nantucket Steamship Authority who is directly implementing and enforcing the medical treatment policies at issue in this case. She requires Plaintiffs to comply with the contested policies set forth in this Complaint or face termination from employment. She has issued letters to all Plaintiffs rejecting their requests for religious exemption and reasonable accommodation, as well as letters informing Plaintiffs that they are suspended from work without pay. She is sued in her official capacity.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over this matter pursuant to G.L. c. 151B, § 9, which provides that "[a]n aggrieved person may also seek temporary injunctive relief in the superior, housing or probate court within such county at any time to prevent irreparable injury during the pendency of or prior to the filing of a complaint with the commission." Plaintiffs seek injunctive relief prior to their filing of complaints with the Massachusetts Commission Against Discrimination, which, under G.L. c. 151B, § 9, is not a bar to this action.

24.     Venue is proper because Defendants' principal office is located in this county, the majority of Plaintiffs are residents of this county, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this county.

## ALLEGATIONS COMMON TO ALL COUNTS

25.     On or about December 13, 2021, the Governing Board of Defendants approved the "COVID-19 Vaccination Verification Policy", which is a policy, practice, custom and/or procedure that requires all Authority employees, including Plaintiffs, to submit proof of COVID-19 vaccination by February 16, 2022, as a condition of continued employment (the

"Policy"). A true copy of the Policy as approved by Defendants on December 13, 2021 is attached hereto as Exhibit 1.

26.     The introduction to the Policy recites that Defendants adopted the vaccine mandate pursuant to Governor Baker's Executive Order No. 595 ("EO 595"), which in fact only *encouraged* public bodies such as the Authority to do so, as well as the now-withdrawn Occupational Safety and Health Administration ("OSHA") emergency temporary standard ("ETS"), "which establish[ed] binding requirements *to protect unvaccinated employees* of large employers (100 or more employees) from the risk of contracting COVID-19 in the workplace" (emphasis added). The introductory section to the Policy states in closing that the Authority "requires all of its employees to provide documentation that they have received COVID-19 vaccination in order *to prevent viral infection and transmission*" (emphasis added).

27.     None of the available COVID-19 vaccines prevent viral infection and/or transmission.[2]

28.     Defendants' General Manager, Robert Davis, is quoted in the Martha's Vineyard Times on January 4, 2022, discussing the Policy: "We've been following the governor's order involving

_____

2 See Franco-Paredes C. Transmissibility of SARS-CoV-2 among fully vaccinated individuals. *Lancet Infect Dis.* Published online Dec. 22, 2021. https://www.ncbi.nlm.nih.gov/pmc/articles/ PMC8694744/. Franco-Paredes, of the University of Colorado's Division of Infectious Disease, writes in reference to Annelies Wilder-Smith's landmark study (Wilder-Smith A. What is the vaccine effect on reducing transmission in the context of the SARS-CoV-2 delta variant? *Lancet Infect Dis.* 2021 https://doi/org/10.1016/S1473-3099(21)00690-3 published online Oct 29) which demonstrated near-identical peak viral loads between unvaccinated and vaccinated healthcare workers in Israel, the following: "[Wilder-Smith's] study showed that the impact of vaccination on community transmission of circulating variants of SARS-CoV-2 appeared to be not significantly different from the impact among unvaccinated people. The scientific rationale for mandatory vaccination in the USA relies on the premise that vaccination prevents transmission to others, resulting in a "pandemic of the unvaccinated". Yet, the demonstration of COVID-19 breakthrough infections among fully vaccinated health-care workers (HCW) in Israel, who in turn may transmit this infection to their patients, requires a reassessment of compulsory vaccination policies leading to the job dismissal of unvaccinated HCW in the USA."

vaccination requirements for state workers…We're also cognizant of the president's order regarding employers with over 100 employees. And _we also understand that the potential for future federal funding will be tied to having a mandate_."[3]

29.     Similar to EO 595, Defendants' Policy includes "limited exemptions" for medical contraindications and sincerely held religious beliefs, "provided that any such employee is able to perform their essential job functions with a reasonable accommodation that is not an undue burden on the Authority."

30.     The Policy itself provides an accommodation for unvaccinated employees who are awaiting decision on timely filed exemption requests. Per the Policy, as of January 5, 2022, Plaintiffs were required to wear masks while in close contact with other individuals in the workplace and to provide proof of negative polymerase chain reaction ("PCR") tests to the Human Resources Department at the beginning of each work week at Plaintiffs' own expenses.

31.     Although Defendants approved the Policy on December 13, 2021, Defendants did not issue the Policy to employees at large until the afternoon of January 3, 2022, a mere two days before January 5, 2022, the date upon which requests for religious or medical exemption became due under the Policy or else were functionally waived (as occurred to Plaintiffs Simoneau and D'Amario).

32.     Defendants issued another memorandum to employees on January 5, 2022, which provided guidelines for implementation of the Policy (the "Guidelines Memorandum"). The Guidelines Memorandum explained that employees whose exemption requests were denied or

---

[3] See "Steamship Authority adopts vaccine mandate," Martha's Vineyard Times, January 4, 2022. https://www.mvtimes.com/2022/01/04/steamship-authority-adopts-vaccine-mandate/

not yet submitted would face progressive discipline in the form of two phases of unpaid

suspension—five days followed by a hearing then a further ten days—culminating in termination

of the unvaccinated employees on February 16, 2022. A true copy of the January 5, 2022,

Guidelines Memorandum is attached hereto as <u>Exhibit 2</u>.

33.     Plaintiffs (with the exception of Simoneau and D'Amario) submitted timely requests for

religious exemptions and reasonable accommodations on or about January 5, 2022. Each

Plaintiff expressly articulated his or her sincerely held religious beliefs and articulated how

taking the COVID-19 vaccine would substantially interfere with the exercise of such sincerely

held religious beliefs. Plaintiffs sought a variety accommodations similar to those required by

Defendants' Policy, such as, to continue masking while in close contact with other individuals in

the workplace and to provide proof of negative PCR tests to the Human Resources Department at

the beginning of each work week at his or her own expense. True copies of Plaintiffs' Brox,

Fernandes, Bondarek, Sheedy, Menton, Ovaska, Anderson, Richardson and Ennis religious

exemption and reasonable accommodation requests are attached hereto as <u>Exhibit 3</u>. Certain

Plaintiffs were requested by Kennefick to supplement their original requests, where applicable,

such supplements are included in <u>Exhibit 3</u>.

34.     Plaintiffs Simoneau and D'Amario tendered tardy religious exemption and reasonable

accommodation requests to Defendant Kennefick on February 4, 2022. Kennefick responded that

the window for submission had closed and Defendants were no longer accepting exemption

requests. Simoneau and D'Amario are currently suspended without pay and facing imminent

termination on February 16, 2022 for being unvaccinated. True copies of the February 4, 2022

religious exemption and reasonable accommodation requests as submitted by Simoneau and D'Amario are attached hereto as Exhibit 4.

35.     Plaintiffs uniformly abided by Defendants' requirements to mask and weekly test from January 5, 2022 until their unpaid suspensions began.

36.     On January 24, 2022, Defendant Kennefick issued form letters purporting to deny Plaintiffs' Brox, Fernandes, Bondarek, Sheedy, Menton, Ovaska, Anderson, Richardson and Ennis exemption and accommodation requests, stating as follows:

> "After consideration and review of the information and documentation that you submitted, we are *unable to approve* your request due to the *direct threat your unvaccinated status would pose to the health and well-being of your fellow employees*, our customers and/or our vendors. Due to the nature of your position as a [Captain, Parking Lot Cashier, Terminal Worker, Pilot, etc.], you are expected and required to interact daily in person with your fellow employees, our customers and/or our vendors. Accordingly, we determined that an exemption from the Policy would *unreasonably risk their safety* as well as your own" (emphasis added).

Kennefick summarily informed Plaintiffs that disciplinary action would commence upon their failure to "get [their] first shot of a vaccine…" within three calendar days. True copies of Kennefick's January 24, 2022 letters to Plaintiffs are attached hereto under Exhibit 5.

37.     Defendants' position—as made clear by Defendant Kennefick's January 24, 2022 letters —that Plaintiffs' unvaccinated statuses pose "direct threats" to vaccinated employees and others runs contrary to the rationale for the OSHA ETS. The *raison d'être* for the OSHA ETS, while it lived before being struck down by the Supreme Court of the United States followed by its withdrawal by OSHA, was to "protect unvaccinated employees" from the risk of contracting COVID-19, not to protect vaccinated employees and others from the unvaccinated. That, of course, is what the vaccines are for.

38.     Plaintiffs regularly communicate with other current and former Authority employees who requested exemptions and, after diligent inquiry, are aware of only one case in which Defendants granted a reasonable accommodation to an employee who requested a medical exemption with the support of the employee's physician. Upon information and belief, this medical accommodation expires in April, 2022, at which point the employee—a Captain, akin to Plaintiff Brox—will likely be "in the same boat" as Plaintiffs with Defendants "unable to approve" his request for religious exemption.

39.     On January 31, 2022, Defendant Kennefick issued another round of form letters via email to Plaintiffs, which provided retroactive notice that their five-day unpaid suspensions began on January 28, 2022. These letters uniformly recite the following: "As an employee refusing to be vaccinated and voluntarily resigning, you will be suspended without pay for five (5) days and then for ten (10) days and eventually terminated if you continue to refuse to get vaccinated." Kennefick's email correspondence included as an attachment an unchanged, unedited copy of the December 13, 2021 Policy (see Exhibit 1), which continues to cite the withdrawn OSHA ETS as a reason for the Authority's vaccine mandate. True copies of Kennefick's January 31, 2022 letters are attached hereto under Exhibit 6.

40.     On February 3, 2022, the "hearings" referred to in Defendant Kennefick's Guidelines Memorandum began and, as of this date, are still in progress. Plaintiffs who have undergone this process uniformly describe these "hearings" as unproductive, one-sided, occasionally hostile affairs. It is evident from Plaintiffs' collective experiences that these so-called "hearings" are not opportunities to appeal religious exemption requests or otherwise engage in a good faith and

interactive process to determine whether effective, reasonable accommodations could be found and implemented.

41.     During these "hearings", a number of Plaintiffs submitted questionnaires to Defendant Kennefick seeking answers regarding the availability of various COVID-19 vaccines and related insurance and liability questions, which Kennefick has refused to review or take action on with Plaintiffs. A true copy of such questionnaires is attached hereto as Exhibit 7.

42.     Defendants did not engage in timely, good faith and interactive processes to determine whether effective, reasonable accommodations could enable Plaintiffs to perform the essential functions of their jobs. To the extent Defendants purported to do so, the process was a sham.

43.     If Defendants believed that all conceivable accommodations would impose an undue hardship or burden on the Authority, Defendants should not have invited employees such as Plaintiffs to submit requests for religious exemptions and accommodations. If Defendants believed that all conceivable accommodations would impose an undue hardship or burden, by inviting employees with sincerely held religious beliefs, such as Plaintiffs, to apply for religious exemption, Defendants' purpose was to identify such employees in order to suspend them and terminate their employment.

44.     There is a clear and immediate danger that Defendants will terminate Plaintiffs' employments (with the exception of Plaintiff Ennis) on February 16, 2022.

## LEGAL CLAIMS

### Count 1

**Violation of the Constitution of the Commonwealth of Massachusetts, Declaration of the Rights of the Inhabitants of the Commonwealth of Massachusetts**

## Article II

45.     Plaintiffs reallege and incorporate herein by reference the factual allegations contained in each and every other paragraph of this Complaint.

46.     Article 2 of the Declaration of Rights of the Inhabitants of the Commonwealth of Massachusetts declares that "no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping God in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship."

47.     By their acts and omissions, Defendants have hurt and restrained Plaintiffs from their religious profession and sentiments.

48.     As a result, Plaintiffs have suffered and continue to suffer damage and irreparable injuries.

## Count 2

### 42 U.S.C. § 1983: Violation of Plaintiffs' Free Exercise of Religion under the First Amendment to the United States Constitution

49.     Plaintiffs reallege and incorporate herein by reference the factual allegations contained in each and every other paragraph of this Complaint.

50.     The First Amendment to the Constitution of the United States declares that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof".

51.     By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted and enforced under color of state law, Defendants deprived Plaintiffs of their

right to the free exercise of their sincerely held religious beliefs in violation of the First Amendment, as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

52.     Defendants violate Plaintiffs' First Amendment right to freely exercise their religious beliefs by mandating an invasive medical treatment that substantially interferes with Plaintiffs' religious free exercise rights.

53.     Defendants' policies violate the First Amendment by punishing employees who exercise their religious beliefs in connection with their personal medical decisions.

54.     Defendants' policies and practices are not general laws as they specifically target sincerely held Christian beliefs and other faiths, such as Plaintiffs' religious views, but leave room for accommodating medical exemptions for employees whose physicians support brief delays in receiving COVID-19 vaccination.

55.     Defendants' policies and practices further no compelling governmental interest as they directly violate Plaintiffs' First Amendment right to free exercise of religion.

56.     Defendants' policies and practices fail to provide the least restrictive means of furthering any state interest and are not narrowly tailored.

57.     Defendants' policies and practices create government-imposed, coercive pressure on Plaintiffs to change or violate their sincerely held religious beliefs.

58.     Defendants' policies, practices, customs and procedures punish and impose discipline, up to and including termination, on any employee for exercising his or her right to free exercise of his or her religious beliefs. Defendants' actions injure Plaintiffs by chilling their religious activity and religious speech through threat of termination, actual discipline in the form of unpaid

suspensions, and sanction by Defendants for failure to comply with its new vaccine mandate policy.

59.    As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal and compensatory damages for the loss of their constitutional rights.

## Count 3

### Religious Discrimination: G.L. c. 151B, § 4

60.    Plaintiffs reallege and incorporate herein by reference the factual allegations contained in each and every other paragraph of this Complaint.

61.    In violation of G.L. c. 151B, § 4, Defendants imposed upon Plaintiffs, as a condition of retaining employment, certain terms and conditions, compliance with which would have required Plaintiffs to violate, or forego the practice of, their religion as required by that religion or their sincerely held beliefs or convictions thereof, and Defendants did not make reasonable accommodation to the religious needs of Plaintiffs.

62.    As a result, Plaintiffs have suffered and continue to suffer irreparable injuries.

63.    G.L. c. 151B, § 9 provides that "[a]n aggrieved person may also seek temporary injunctive relief in the superior...court...at any time to prevent irreparable injury during the pendency of or prior to the filing of a complaint with the commission", pursuant to which Plaintiffs are entitled to injunctive relief requiring Defendants to halt disciplinary actions against them, abandon the February 16, 2022 vaccinate-or-terminate deadline, and to enter into a good

faith interactive process with Plaintiffs to determine whether Defendants can accommodate Plaintiffs' sincere religious practices and observances.

### Count 4

### 42 U.S.C. § 1983: Violation of Plaintiffs' Rights to Privacy, Personal Autonomy, and Personal Identity Under the Fourteenth Amendment to the Constitution of the United States

64.     Plaintiffs reallege and incorporate herein by reference the factual allegations contained in each and every other paragraph of this Complaint.

65.     Defendants are government actors for purposes of 42 U.S.C. § 1983, who took the actions described herein under color of State law.

66.     The Fourteenth Amendment to the Constitution of the United States guarantees that States shall not "deprive any person of life, liberty, or property, without due process of law."

67.     As applied to Plaintiffs, Defendants' practice pursuant to their vaccine mandate Policy violates the Fourteenth Amendment.

68.     As applied to Plaintiffs, Defendants' practice pursuant to their vaccine mandate Policy is not narrowly tailored, nor is it the least restrictive means, to accomplish any permissible governmental purpose as applied to Plaintiffs.

69.     Plaintiffs have no adequate remedy at law and, unless enjoined, Defendants will continue to act under color of law to deprive Plaintiffs of constitutionally guaranteed rights, thereby irreparably harming Plaintiffs.

70.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and to temporary, preliminary and permanent injunctive relief enjoining and forestalling Defendants from terminating Plaintiffs' employments on February 16, 2022, further enforcing their vaccine

mandate (i.e., requiring further doses and "boosters" in the case of Plaintiff Ennis), and invalidating all such disciplinary actions taken against Plaintiffs since at least January 28, 2022.

71.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are, therefore, entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988.

72.     As a result, Plaintiffs have suffered, are suffering, and will continue to suffer damage and irreparable harm, including the loss of their fundamental constitutional rights, entitling them to nominal and compensatory damages for the loss of their constitutional rights.

73.     Plaintiffs are entitled to injunctive relief requiring Defendants not to terminate Plaintiffs' employments, to reinstate and restore Plaintiffs to their employment statuses prior to the institution of disciplinary proceedings against them, and to enter into a good faith, interactive process with Plaintiffs to determine whether Defendants can accommodate Plaintiff's religious practices and observances.

## PRAYER FOR RELIEF

Plaintiffs respectfully request a trial by jury and ask that this Honorable Court:

A.     Declare that Defendants are in violation of G.L. c. 151B, § 4;

B.     Declare that Defendants' vaccine mandate policy, which provides no religious accommodations, is invalid and unconstitutional for all the reasons as set forth in this Complaint;

C.     Declare that Defendants violated Plaintiffs' fundamental constitutional rights, as set forth in this Complaint;

D.     Issue a Temporary Restraining Order, pursuant to Rule 65 of the Massachusetts Rules of Civil Procedure, preliminarily enjoining Defendants from terminating Plaintiffs' employments on

February 16, 2022, and to rescind and revoke the disciplinary actions taken against Plaintiffs hitherto;

E.     Enter an order preliminarily requiring Defendants to enter into a good faith, interactive process with Plaintiffs to determine whether Defendants can accommodate Plaintiffs' religious practices and observances without Defendants incurring significant difficulty or expense;

F.     Award Plaintiffs their back pay;

G.     Award Plaintiffs their damages;

H.     Order Defendants to pay Plaintiffs punitive damages;

I.     Award Plaintiffs their costs, expenses and reasonable attorney's fees, pursuant to 42 U.S.C. § 1988 and other applicable law; and

J.     Award such other relief as the Court deems just and appropriate.

## **VERIFICATION**

I, Albert Brox, make oath and state as follows: I am a Plaintiff in this matter, have read the foregoing Verified Complaint, know and understand the contents thereof, and state that the same are true of my own knowledge except as to such matters therein stated to be on information and belief, and as to these matters I believe them to be true. I declare under the pains and penalties of perjury that the foregoing is true and correct.

SIGNED AND SUBSCRIBED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 10th DAY OF FEBRUARY, 2022.

Albert Brox

Respectfully Submitted:

Captain Albert Brox et al.,
By Plaintiffs' Counsel

Patrick K. Daubert, Esq.
BBO#: 694802
Daubert Law, PLLC
100 Independence Dr.
Suite 7-591
Hyannis, MA 02601
Tel: (508) 205-4350
DaubertLaw@iCloud.com

Dated:  February 11, 2022

# EXHIBIT 1



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority

January 3, 2022

TO:        All Steamship Authority Employees.

CC:        Jeffrey Sharp, Teamsters Local No. 59; Stuart Fay, Marine Engineers Beneficial Association; and Tracy Wright, SEIU

FROM:      Robert Davis, General Manager; and Terence Kenneally, General Counsel

SUBJECT:   COVID-19 Vaccination Verification Policy

Attached please find a copy of the "COVID-19 Vaccination Verification Policy for Employees of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority." Please immediately circulate and post the attached policy and its enclosures for employees.

Since this past fall, we have been engaged in ongoing discussions with the unions relative to implementation of this policy. While we intend to continue these discussions, it is the Authority's policy that all employees demonstrate that they have received at least one COVID-19 vaccination by the start of its 2022 Winter Operating Schedule on January 5, 2022.

To meet the policy's requirements, please complete the attached "COVID-19 Vaccination Employee Self-Attestation Form" and submit the completed form and any supporting documents to the Authority's Human Resources Department. If employees need assistance with obtaining vaccinations, we will pursue setting up another vaccination clinic.

If you have any questions concerning the policy, please direct them to the Human Resources Department at extensions 203, 206 or 247 or send an email to hr@steamshipauthority.com.

Thank you.

---

Our mission is to operate a safe, efficient, and reliable transportation system for the islands of Martha's Vineyard and Nantucket with a commitment to sustainability, accessibility, our port communities, and public engagement.

**228 Palmer Avenue**
**Falmouth, MA 02540**
**(508) 548-5011**

COVID-19 VACCINATION VERIFICATION POLICY
FOR EMPLOYEES OF THE
WOODS HOLE, MARTHA'S VINEYARD AND
NANTUCKET STEAMSHIP AUTHORITY

Issued and approved by the Authority's
Board on December 13, 2021

## 1. INTRODUCTION

On August 19, 2021, the Governor of the Commonwealth issued Executive Order No. 595, which states "all executive department employees shall be required to demonstrate that they have received COVID-19 vaccination and maintain full COVID-19 vaccination as a condition of continuing employment." The executive order also states, "[i]ndependent agencies and authorities, public institutions of higher education, elected officials, other constitutional offices, the Legislature, and the Judiciary are encouraged to adopt policies consistent with this Executive Order." (Underlining is our emphasis.)

Furthermore, on November 4, 2021, the President of the United States announced the details of two (2) comprehensive rules that establish mandatory COVID-19 vaccination requirements for employers, both public and private, with 100 or more employees. In support of these rules, the Occupational Safety and Health Administration (OSHA) issued its emergency temporary standard (ETS), which establish binding requirements to protect unvaccinated employees of large employers (100 or more employees) from the risk of contracting COVID-19 in the workplace.

Pursuant to M.G.L. c. 149 §6 ½, the Authority, as a "public employer[1]," must implement methods of reducing work related injuries and illness that meet the minimum requirements provided under the federal Occupational Safety and Health Act of 1970.

Further to the Governor's Executive Order No. 595 and OSHA's ETS concerning mandatory COVID-19 vaccination requirements for employers, the Authority requires all of its employees to provide documentation that they have received COVID-19 vaccination in order to prevent viral infection and transmission. The Authority's vaccination policy is set forth as follows:

---

[1] The statutory definition of 'Public employers" is "places of employment subject to section 28 of chapter 7, any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth or of any political subdivision of the commonwealth, any quasi-public independent entity and any authority or body politic and corporate established by the general court to serve a public purpose."

II.   DEFINITIONS

COVID-19:  Coronavirus Disease 2019, the disease caused by the SARS-CoV-2 virus.

COVID-19 Vaccination:  The full required regimen of vaccine doses of a vaccine authorized or approved for use by the Food and Drug Administration (FDA) or the World Health Organization (WHO) to provide acquired immunity against COVID-19. COVID-19 vaccination is the full required regimen as determined by the Centers for Disease Control or Prevention (CDC) and adopted by the Department of Public Health as the standard applicable to the Governor's Executive Order 595 and this Covid19 Vaccination Verification Policy.

Employee:  Any person who performs services for the Authority for wage, remuneration, or other compensation, including full-time, part-time, seasonal, intermittent, temporary, post-retiree and contract employees, and interns.

- The Authority also request vaccination documentation from contractors and vendors working in close contact (in accordance with the CDC definition) with the Authority's employees.

III.   GENERAL PROVISIONS

It is the Authority's policy that all employees demonstrate that they have received at least one COVID-19 vaccination by the start of its 2022 Winter Operating Schedule on January 5, 2022. Applicants who have been or are extended an offer of employment before December 21, 2021 must demonstrate that they have received or will receive at least one COVID-19 vaccination by January 5, 2022. For any offer extended on or after December 21, 2021, employment will be conditional upon an applicant's demonstration that they have received at least one COVID-19 vaccination.

All employees shall be fully vaccinated in accordance with the CDC definition on or before February 16, 2022. The Authority will pay a total vaccination incentive of $500 less any applicable payroll taxes to any current employee who demonstrates that they are fully vaccinated in accordance with the CDC definition on or before February 16, 2022. Any current employee who has previously received the Authority's $100 vaccination incentive shall receive an additional $400 less any applicable payroll taxes provided they demonstrate that they are fully vaccinated in accordance with the CDC definition on or before February 16, 2022.

Employees shall thereafter be required to demonstrate that they continue to maintain COVID-19 vaccinations in accordance with the CDC definition of fully vaccinated and as adopted by the Massachusetts Department of Public Health.

Limited exemptions to this policy are addressed in Section IV.

## IV.    PROCEDURES AND INSTRUCTIONS

1. All employees are required to follow required procedures to provide acceptable documentation that they are fully vaccinated in accordance with the CDC definition on or before February 16, 2022. Employees are required to follow required procedures to demonstrate at appropriate intervals that they continue to maintain COVID-19 vaccinations as recommended or determined by the CDC that boosters are a necessary component of a full required regimen for COVID-19 Vaccination and as adopted by the Massachusetts Department of Public Health.

2. Acceptable documentation shall include: Employee self-attestation, which shall consist of:

   a. A sworn statement that the employee received the COVID-19 vaccination and\or booster, and
   b. Employee authorization for verification through the Massachusetts Immunization Information System (MIIS) system; and
   c. Employee agreement to provide an acceptable record of vaccination; or
   d. A sworn statement that the employee has been approved by the Authority for an exemption.

3. The Authority has developed the attached self-attestation form for employees to submit the information required in paragraph 2 to the Authority's Human Resources Department.

4. All documentation related to an individual's COVID-19 vaccinations will be maintained confidentially by the Authority's Human Resources Department and will be held separate from an employee's personnel file.

5. Employees may use their sick leave or the Massachusetts Emergency Paid Sick Leave for leave from work to obtain COVID-19 vaccination. A copy of the Employee Notice Regarding the Massachusetts Emergency Paid Sick Leave is attached hereto.

6. Employees may be approved for exemption from the requirement to provide documentation confirming COVID-19 vaccination under the following circumstances:

   a. Employees who verify and document that the vaccine is medically contradicted, which means administration of the COVID-19 vaccine to that individual would likely be detrimental to the individual's health, provided any such employee is able to perform their essential job functions with a reasonable accommodation that is not an undue burden on the Authority. Documentation must be provided from an employee's medical/health care provider to support the request. The Authority reserves the right to obtain a second opinion to any medical exemption requests.

b. Employees who object to vaccination due to a sincerely held religious belief, provided that any such employee is able to perform their essential job functions with a reasonable accommodation that is not an undue burden on the Authority. Requests for religious exemptions will be managed by the Authority on a case-by-case basis and if an employee is a member of a bargaining unit in conjunction with the employee's union.

7. Employees who telework will be required to provide documentation of COVID-19 vaccination in accordance with this policy.

8. Employees on a full-time continuous leave on the effective date of this policy that extends beyond February 16, 2022, are required to provide documentation prior to their return to work.

a. Employees who fail to provide documentation at the conclusion of their approved leave period will be placed on an unauthorized leave status until documentation is received and will otherwise be subject paragraph 9.

9. Employees who fail to comply with this policy and are not otherwise subject to paragraph 6 or on an approved full-time continuous leave will be subject to progressive discipline, up to and including termination.

10. Any employee who submits false documentation or otherwise misrepresents their vaccination status will be terminated from employment.

## V. ROLES AND RESPONSIBILITIES

The Authority:

- Issue and maintain a current COVID-19 verification policy.
- Establish an IT solution and/or procedures for employees to provide self-attestation information or documentation.
- Distribute this policy and related guidance to Authority employees.
- Communicate to all employees any new or revised compliance procedures.
- Ensure that job postings and hiring guidelines include the COVID-19 verification policy requirements.
- Maintain all COVID-19 documentation in confidential files or databases, separate from employee personnel records.
- Through the Human Resources Department provide guidance and support of the reasonable accommodation process.
- Oversee any audit process, manage enforcement of policy with audit results.
- Review any approved exemptions.

Human Resources Department:

- Ensure policy distribution and related guidance for employees without access to email.
- Review requests for reasonable accommodations to this policy and engage in the interactive process and issue timely approvals or denials of accommodation requests.
- Notify any employee on a continuous leave of the policy requirement.
- Ensure employees have completed self-attestation or reasonable accommodation process.
- Institute discipline for policy non-compliance or fraud.
- Report monthly on all approved policy exemptions.

Employees:

- As of Wednesday, January 5, 2022, all employees who are not fully vaccinated in accordance with the CDC definition must wear a mask in the workplace. All employees must continue to adhere to all current mask mandates applicable to public transportation including U.S. Coast Guard requirements.
- As of Wednesday, January 5, 2022, all employees approved for or in the process of seeking a medical or religious belief exemption from the vaccination requirements set forth in this policy must (1) wear a mask while in close contact in accordance with the CDC definition with other individuals in the workplace and (2) provide at the beginning of each work week documentation of a negative polymerase chain reaction (PCR) test administered by a certified medical facility within the preceding twenty-four (24) hours. The cost of the PCR test shall be the sole responsibility of the employee and is not reimbursable. All documentation related to the exemption process and related testing must be submitted to the Human Resources Department.
- All vaccinated employees must submit acceptable documentation of COVID-19 vaccine or booster doses in accordance with this policy and related procedures to the Human Resources Department.

Contractors or Vendors Attending any of the Authority's facilities:

- As of Wednesday, January 5, 2022, all contractors or vendors who are not fully vaccinated in accordance with the CDC definition must wear a mask in any facility.
- All vaccinated contractors or vendors must submit acceptable documentation of COVID-19 vaccine or booster doses in accordance with this policy and related procedures.

# EXHIBIT 2



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority

January 5, 2022

TO: Janice Kennefick, Human Resources; Alison Fletcher, Shoreside Operations; Mark Rozum, Treasurer; Todd Falvey, Dir. of Security; Mark Amundsen, Dir. of Marine Operations; Charlie Monteiro, Port Captain; and Paul Hennessy, Asst. Port Captain; Angela Sampson, HSQE

CC: Jeffrey Sharp, Teamsters Local No. 59; Stuart Fay, Marine Engineers Beneficial Association; and Tracy Wright, SEIU

FROM: Robert Davis, General Manager; and Terence Kenneally, General Counsel

SUBJECT: COVID-19 Vaccination Verification Policy Guidelines

In keeping with the Authority's COVID-19 Vaccination Verification Policy (the "Policy") and its goal of a fully vaccinated workforce by February 16, 2022, the Authority has composed a set of potential scenarios, below. A few general principles guide these scenarios: (a) employees who have no legitimate exemption, and who refuse to become fully vaccinated, will eventually be terminated if they do not resign voluntarily; (b) human experience teaches that some employees will have a difficult time deciding whether to become fully vaccinated, and so there are several chances for employees who are initially resistant to change their minds and become vaccinated before being terminated; and (c) delays in decision-making attributable to the Authority, and not to policy avoidance, resistance or rejection by the employees, will not be held against the employees. With those principles in mind, the Authority has designed these explanatory scenarios:

## 1) Employees who refuse to be vaccinated:

Employees will be offered the chance to voluntarily resign. Employees taking this option, if eventually vaccinated, may be placed on an appropriate recall list subject to roster seniority. All vacation/sick time accrued by an employee who elects to voluntarily resign shall be paid accordingly.

Our mission is to operate a safe, efficient, and reliable transportation system for the islands of Martha's Vineyard and Nantucket with a commitment to sustainability, accessibility, our port communities, and public engagement.

228 Palmer Avenue
Falmouth, MA 02540
(508) 548-5011

Employees refusing to voluntarily resign should be suspended without pay (first for five (5) days and then for ten (10) days) and terminated if they continue to refuse to get vaccinated during the progressive discipline process. (A hearing will need to be scheduled before the ten-day suspension and termination.) At any point before termination, the employee may elect to become compliant and get vaccinated (discussed in additional scenarios, below) or voluntarily resign and be included on the recall list (any related discipline would also be removed from their file). Suspended employees may elect to be paid from any accrued vacation/sick time earned.

**2) Employees who are suspended for refusing to be vaccinated, but reconsider and get their first dose of an approved vaccine at any point during the disciplinary process:**

Any unpaid suspension will be lifted and the employee returned to work immediately upon becoming compliant with the Policy. All related discipline would be removed from their file. After receiving the first dose, the employee will be allowed to return to work provided they follow all safety protocols outlined in the Policy.

Employees who have not received the full required regimen of vaccine doses of a COVID-19 vaccine by February 16, 2022 but indicate that they will comply will be suspended, without pay, for ten (10) days for failing to follow the Policy. Like the scenario above, any unpaid suspension should be lifted and the employee returned to work immediately upon becoming compliant with the Policy. The employee may elect to use their paid leave accruals while waiting for their second dose.

**3) Employees who are not fully vaccinated by February 16, 2022, but who have begun the vaccination process (i.e., received their first dose and have scheduled their second dose):**

Employees who have not received the full required regimen of vaccine doses of a COVID-19 vaccine by February 16, 2022 should be placed on an approved unpaid leave, however, at the option of the employee, accrued leave time could be used. Like the scenario above, any unpaid suspension should be lifted and the employee returned to work immediately upon becoming compliant with the Policy. All related discipline would be removed from their file.

**4) An employee who filed for an exemption on or before January 5, 2022, but has not received a decision by February 16, 2022:**

Contingent on the employee providing all requested information/documentation in a timely fashion, the employee may continue to work until a decision has been rendered, provided they continue to wear a face covering at work and follow all safety protocols outlined in the Policy including submitting weekly testing results.

If a decision to deny an exemption request is made, the employee will have three (3) calendar days to get their first shot or disciplinary action will commence. If an employee receives their first dose (of a two-dose regimen) within three (3) calendar days of their denial, the employee should be allowed to continue working provided they continue to wear a face covering at work and follow all safety protocols outlined in the Policy. At the option of the employee, accrued leave time may be used. However, if the employee ultimately refuses to be vaccinated, please refer to scenario #1, above.

**5) If an employee files for an exemption after January 5th, but before February 16th, but does not receive a decision by February 16th:**

The employee should be placed on an approved unpaid leave as of February 17th, however, at the option of the employee, accrued leave time may be used.

If the exemption is not approved, and the employee agrees to become vaccinated within three (3) calendar days, the employee may continue on the approved unpaid leave until he/she is in compliance with the Policy. At the option of the employee, accrued leave time may be used. However, if the employee refuses to be vaccinated, please refer to scenario #1.

**6) Employees who file for an exemption after February 16th:**

Since the employee did not comply with the exemption deadline, he/she should receive a ten (10) day unpaid suspension. If a decision on the exemption has not been determined at the conclusion of the suspension, the employee should be placed on an approved unpaid leave, and at the option of the employee, may use accrued leave time.

If the exemption is not approved, and the employee agrees to become vaccinated within three (3) calendar days, the employee may continue on the approved unpaid leave until he/she is in compliance with the Policy. At the option of the employee, accrued leave time may be used. However, if the employee refuses to be vaccinated, please refer to scenario #1.

# EXHIBIT 3

## Request for Reasonable Accommodation:  Religion / COVID-19 Vaccine

Date:

Name of Employee: PAUL MENTON  Position held by Employee: PILOT

Phone Number: 508-524-9181

I understand that it is the policy of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (the "Authority") that I become fully vaccinated against COVID-19 by February 16, 2022. The Authority's vaccine mandate is based on our commitment to providing a safe, inclusive and supportive experience for all and recognizes true and genuine observance of faith as it pertains to the practice of immunization. In order to request an accommodation based on a sincerely held religious belief, an employee must complete and sign the form below, and otherwise provide materials requested by the Authority. The Authority will consider the request and respond after reviewing the information submitted.

Individuals with an approved exemption may be required to comply with COVID-19 testing and other preventative requirements as specified by the Authority, and as may be updated from time to time.  **By signing below, if an exemption is granted, I acknowledge that I will follow any such COVID-19 protocols applicable to me.  I understand that I assume all risks of non-vaccination.**

By my signature below, I am attesting under oath that I have a sincerely held religious observance, practice, and/or belief that conflicts with the COVID vaccine mandate. I also understand that if any of the information I provide below is false or not complete, the exemption may be revoked and I may be subject to disciplinary action, up to and including termination from employment.

With those understandings, I am requesting an accommodation and providing the following information to assist in my request.  (Attach additional documentation, if necessary.)

1.  What is the religion or religious organization for which you are seeking an accommodation?

    THE ANGELICAN CHURCH OF THE RESURRECTION

2.  What is the name, title, address and contact information, if any, of the leader of the religious organization?

    Name: REV ALAN WILMOT,

    Title: PASTOR

    Address: 94 KING JAMES DRIVE  SOUTH DENNIS 0261

    Telephone number/email: 508-896-2550

3. What is the specific sincerely held religious belief, observance or practice for which you are seeking an accommodation? I HAVE A RELIGIOUS CONVICTION AGAINST TAKING ANY VACCINES. IT IS A SIN. IT AGAINST GOD'S WILL,

4. Describe the conflict between your specific sincerely held religious belief, observance and/or practice with the requirement that you be fully vaccinated from COVID-19 by the deadline imposed by the Authority. GOD GAVE ME AN IMMUNE SYSTEM. I HAVE NEVER TAKEN ANY VACCINE (INCLUDING FLU SHOT) IN MY ADULT LIFE. I WAS SICK WITH COL FROM CONTACT AT WORK ON BOAT.

5. How long will you need an accommodation for the identified sincerely held religious practice, observance and/or belief? FOREVER

6. Do you have any suggestions for possible accommodations? I WILL FOLLOW ALL CDC PROTOCOLS, WEAR A MASK, COMPLY WITH ALL TESTING. I WILL ASSUME ALL RISKS OF NON-VACCINATION

7. Is there any other information that you believe will assist us in our consideration of your request? For example, whether your religious objection is to the use of all vaccines, the COVID-19 vaccines, a specific type of COVID-19 vaccine, or some other subset of vaccines.

I HAVE WORKED AT THE STEAMSHIP AUTHORITY FOR 24 YEARS. I LOVE MY JOB. I ALWAYS BELIEVED I WOULD RETIRE HERE. I AM RESPONSIBLE FOR SUPPORTING 3 DAUGHTERS. I PROVIDE THEIR HEALTH INSURANCE.

The above information is complete and accurate to the best of my knowledge and belief.

Signature of Employee: Paul Minton

Date: 1/4/2022

<u>**Request for Reasonable Accommodation:  Religion / COVID-19 Vaccine**</u>

Date:

Name of Employee: _Tim Richardson_   Position held by Employee: _Oiler_

Phone Number: _508-241-4552_

I understand that it is the policy of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (the "Authority") that I become fully vaccinated against COVID-19 by February 16, 2022.  The Authority's vaccine mandate is based on our commitment to providing a safe, inclusive and supportive experience for all and recognizes true and genuine observance of faith as it pertains to the practice of immunization.  In order to request an accommodation based on a sincerely held religious belief, an employee must complete and sign the form below, and otherwise provide materials requested by the Authority.  The Authority will consider the request and respond after reviewing the information submitted.

Individuals with an approved exemption may be required to comply with COVID-19 testing and other preventative requirements as specified by the Authority, and as may be updated from time to time.  **By signing below, if an exemption is granted, I acknowledge that I will follow any such COVID-19 protocols applicable to me.  I understand that I assume all risks of non-vaccination.**

By my signature below, I am attesting under oath that I have a sincerely held religious observance, practice, and/or belief that conflicts with the COVID vaccine mandate.  I also understand that if any of the information I provide below is false or not complete, the exemption may be revoked and I may be subject to disciplinary action, up to and including termination from employment.

With those understandings, I am requesting an accommodation and providing the following information to assist in my request.  (Attach additional documentation, if necessary.)

1.  What is the religion or religious organization for which you are seeking an accommodation?

    _Catholicism_

2.  What is the name, title, address and contact information, if any, of the leader of the religious organization?

    Name:  _Rev. Gregory Mathias_

    Title:  _Pastor_

    Address:  _230 S. Main St. Centerville, MA. 02632_

    Telephone number/email:  _508-775-5744 / pastor@ olvparish.org_

3. What is the specific sincerely held religious belief, observance or practice for which you are seeking an accommodation? _As a faithful Catholic opposed to abortion, i cannot, according to the Church tenets on conscience, use any product that takes its origin in abortion._

4. Describe the conflict between your specific sincerely held religious belief, observance and/or practice with the requirement that you be fully vaccinated from COVID-19 by the deadline imposed by the Authority. _The J+J vaccine, the Jansen vaccine, uses retinal cells from a fetus that was aborted in 1985 and treated in a lab since. The Pfizer+Moderna vaccines test the MRNA's on fetal cell lines from an aborted fetus cell from 1973._

5. How long will you need an accommodation for the identified sincerely held religious practice, observance and/or belief? _indefinitely._

6. Do you have any suggestions for possible accommodations? _Routine testing, mask wearing and/or social distancing._

7. Is there any other information that you believe will assist us in our consideration of your request? For example, whether your religious objection is to the use of all vaccines, the COVID-19 vaccines, a specific type of COVID-19 vaccine, or some other subset of vaccines.

_Any product, including the Covid-19 vaccines, that sources, tests, or uses any fetal cells from abortions violates my faith and moral conscience._

The above information is complete and accurate to the best of my knowledge and belief.

Signature of Employee: _Timothy Richardson_

Date: _1-5-22_

To Whom It May Concern,
My name is Kim Fernandes and I am a practicing Catholic seeking a religious exemption from my employer- The Woods hole Martha's Vineyard & Nantucket Steamship Authority.

My faith has truly always been a central part of my life From a young age. My Faith is my compass- to direct me in the choices, that I have made- and continue to make. From choosing the friends & company I keep, to whom I date, the type of entertainment I participate in, the books I read, how I carry myself in public, and how I interact and treat others. I often check my conscience daily, I know I have made plenty of mistakes and fallen short of what God would have wanted me to do or say. So, each moment I try to be cautious as to where my thoughts go & the words, that I use. As I grow older, I continue to work on developing that most important relationship with my God & my interior life, that constant yearning to befriend him and too do as I feel he is calling me to do. Yes, this relationship is genuine and sincere.

So, as I have thought long, and hard over these past several weeks regarding, the vaccine mandate-whether, or not I in good conscience, would be able to be inoculated? I pondered, prayed, and gathered my Bible & Catechism of the Catholic Church.
As I searched and prayed, these verses moved me deeply: Jeremiah 1:5- "Before I formed you in the womb I knew you, and before you were born I consecrated you." and Psalms 139:13-16- "For you created my inmost being; you knit me together in my mother's womb. I praise you because I am fearfully and wonderfully made; your works are wonderful, I know that full well. My frame was not hidden from you when I was made in the secret place, when I was woven together in the depths of the earth. Your eyes saw my unformed body; all the days ordained for me were written in your book before one of them came to be." I then opened my Catholic Catechism 2274- "Since it must be treated from conception as a person, the embryo must be defended in its integrity, cared for, and healed, as far as possible, like any other human being."

Based on my honest reflection and prayer my religious convictions and moral conscience, will not allow me to receive any of the Covid19 vaccines Mandated by my employer. Therefore, I would respectfully, like to request a religious accommodation.

Thank you for your time and consideration.

Sincerely,
Kim Fernandes

1/4/22
Employee: Kim Fernandes
Position Held: Lot Cashier

1.    Roman Catholic

2.    Holy Trinity Catholic Church
Fr. Marc P. Tremblay, Pastor
246 Main Street, Rte. 28
West Harwich, MA 02671
    508-432-4000

*Note: Questions- 3,4,5 Typed as separate document

6.    Do you have any suggestions for possible accommodations
    * Wear a fascial covering
    * Continue Personal hygiene protocol-use hand sanitizer & frequently wash
hands
    * Continue to disinfect & sanitize work space-counter tops, pens, office
tools, clip boards, phone, two way radio, door nobs etc.
    * Maintain air flow- keep windows cracked open (during warmer season
open door)
    * Maintain appropriate social distancing
    * If necessary wear disposable gloves
    * if necessary blood testing

Religious Exemption                                                January8, 2022

Employee: Kim Fernandes
Job Description: Lot Cashier
Employer: The Woods Hole Martha's Vineyard

Question 1.
How long have you been a member of Holy Trinity Church?

I have been a member of Holy Trinity Catholic Church from the time I was a child (51 years) I have received all of my Sacraments there-Baptism through Confirmation.

Question 2.
Please explain why your religious beliefs or practices prevent you from being vaccinated for Covid-19.

I am a practicing Christian, and I have closely held beliefs- my Bible is my authority, my compass and guide in life; I adhere to that authority which has been generated by God to me in the scriptures.
God teaches us, that life begins from the moment of conception until natural death-Jeremiah 1:5- "Before I formed you in the womb I knew you, and before you were born I consecrated you; I appointed you a prophet to nations." My life's purpose, is the attainment of eternal salvation with God in His Kingdom someday. Therefore, for me to receive anyone of these vaccines violates my moral conscious and religious convictions dictated to me by God through His Word in the scriptures. Note, 1 Corinthians 3:16-17- "Do you not know that you are God's temple and that God's Spirit dwells in you? If anyone destroyed God's temple, God will destroy him. For God's temple is holy, and you are that temple."

Question 3.
How long have you adhered to these beliefs or practices?

I have adhered to said, beliefs listed in question number two throughout my adult life-To reiterate what I have said, in question number two. I am a practicing Christian, and I have closely held beliefs- God is my supreme authority, my compass and guide in life. He speaks to me through the scriptures, His will and the precepts for my life.

Question 4.

When did you first begin to adhere to these beliefs or practices – and particularly as they relate to vaccination?

Again, God is my Authority-speaking to me through the scriptures which is His Word. I have adhered to this belief since my adult life. Not putting anything within my body, that is questionable in its contents and creation.
I have always used caution as to what, goes into my body. I have avoided taking any medications and or medical treatments, that conflict with the teachings of God-who IS my authority and compass- my guide in choosing and making decisions in all that I do. Note, 1 Corinthians 6:19-20-"Or do you not know that your body is a temple of the Holy Spirit within you, whom you have from God? You are not your own, for you were bought with a price. So glorify God in your body."

Question 5.
In what ways do you practice abiding by these beliefs?

I abide by my belief in God's Authority in my life- Matthew 28:18
"And Jesus came and said to them, "All authority in heaven and on earth has been given to me."
    1.    Daily reading & meditation on the scriptural teachings of God-making an honest effort to put God's teachings into daily practice
    2.    At the end of my day, I recollect my actions of the day with the precepts of the The Ten Commandments  handed down by God to his creation.

I abide by my belief- that life begins at conception and ends at natural death
    1.    By remembering, that all life seen and unsee young and old, rich or poor deserves, and should be treated with dignity and respect. All life has value-a purpose a rational soul. Everyone has something to contribute to the world no matter how small that contribution may be.

Question 6.
Is it only the Covid 19 vaccine that interferes with these religious beliefs?

No, there are other things such as various medications, medical procedures,skin care products, & foods, that are derived from impure sources & or engineered by means not acceptable to the teachings and law of God, which are contained within the Bible- the  only authority in my life.
His Words are my compass and guide. My choices in life are weighed and decided upon according to His teachings and guidance, in His Holy Scriptures-Proverbs 16:9 The heart of man plans his way, but the Lord establishes his steps."
And  1 Corinthians Chapter 6 states- What? Know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not

your own? For ye are brought with a price: therefore glorify God in your body, and in your spirit, which are God's."

Question 7.
Have you received any other vaccinations during the time you held these religious beliefs?  Flu?  MMR? Tetanus?  Shingles?  Hepatitis C?  Other?

For many years, I have gone against the strong encouragement of my medical doctor to receive the Tetanus and Flu shots. Again, I turn to God's words- 1 Corinthians 6:19-20-"Or do you not know that your body is a temple of the Holy Spirit within you, whom you have from God? You are not your own, for you were bought with a price. So glorify God in your body." All my adult life, I have chosen God's creation of natural resources as my medicine chest whenever, possible- herbal & holistic remedies. I have successfully treated a number of my medical ailments such as allergies, the common cold, sore throat, headaches, cuts and bruises, inflammation, menstrual pain, and digestive disturbances.

Question 8.
If so, why did your beliefs not prevent you from having that vaccination as opposed to the COVID 19 vaccine?

This question is not applicable to me because, I have not been inoculated with the vaccinations from question number seven: Flu shot, MMR, Tetanus, Shingles, Hepatitis C or any other vaccine in my adult life. Again, 1 Corinthians 6:19-20- "Or do you not know that your body is a temple of the Holy Spirit within you, whom you have from God?

Question 9.
Explain what accommodation you are seeking and how it allows you to perform the essential functions of your job without, for example, negatively impacting workplace safety or efficiency?

My Accommodations are as follows
        * Wear a fascial covering
        * Continue Personal hygiene protocol-use hand sanitizer & frequently wash hands
        * Continue to disinfect & sanitize work space-counter tops, pens, office tools, clip boards, phone, two way radio, door nobs etc.
        * Maintain air flow- keep windows cracked open (during warmer season open door)
        * Maintain appropriate social distancing
        * If necessary wear disposable gloves

\* Daily temperature check

The said, accommodations are what, I am presently doing,(minus temperature check & glove wearing)and what was implemented when, Covid19 first hit in 2020. I believe my actions, have kept myself and those around me Covid19 free. These said, accommodations, have not negatively impacted the work place safety or efficiency in the present time or in the past.

Question 10.
Besides vaccines, do your religious beliefs prevent you from being tested for COVID 19? Please note, testing is typically simply a swab without an injection or piercing of the skin.
I am not opposed to being tested for the COVID-19 virus.
However, the PCR Nasal Swab Test infringes on my religious convictions 1 Corinthians 6:19-20-"Or do you not know that your body is a temple of the Holy Spirit within you, whom you have from God?" Additionally, "Then he said unto me, Hast thou seen this, O son of man? Is it a light thing to the house of Judah that they commit the abominations which they commit here? for they have filled the land with violence, and have returned to provoke me to anger: and, lo, they put the branch to their nose."– Ezekiel 8:17

Therefore, I would respectfully, like to request the FDA Authorized & Approved PCR Saliva Test provided by US Drug Test Center)(* Please Note: that the PCR Saliva Test is listed as an acceptable form of testing for the COVID19 Virus on the Mass.gov website.) as my weekly form of testing for COVID19 virus. This test can be administered at a doctors office, at work or at home; is sent out to a lab with a 24 hr test results.

Question 11.
Any additional information regarding your beliefs or practices that support your request for a religious accommodation?
"Here I am, Lord; I come to do your will." (Psalm 40) and John 14:15 "If you love me, you will keep my commandments."
My communication & relationship with God-my Authority-is an active daily matter. I turn to Him daily to ask that, He supply for my needs of the day, and His help in carrying out my tasks. I take to him my concerns and doubts- asking for His guidance and help-His strength in making any difficult decisions & taking any difficult actions, that may need to be made in my day.

<u>Request for Reasonable Accommodation:  Religion / COVID-19 Vaccine</u>

Date:

Name of Employee: Steven Ennis_Position held by Employee:__oiler

Phone Number:508951 5841

I understand that it is the policy of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (the "Authority") that I become fully vaccinated against COVID-19 by [insert date]. The Authority's vaccine mandate is based on our commitment to providing a safe, inclusive and supportive experience for all and recognizes true and genuine observance of faith as it pertains to the practice of immunization.  In order to request an accommodation based on a sincerely held religious belief, an employee must complete and sign the form below, and otherwise provide materials requested by the Authority. The Authority will consider the request and respond after reviewing the information submitted.

> **Commented [SJ1]:** Modify as necessary.

Individuals with an approved exemption may be required to comply with COVID-19 testing and other preventative requirements as specified by the Authority, and as may be updated from time to time.  **By signing below, if an exemption is granted, I acknowledge that I will follow any such COVID-19 protocols applicable to me.  I understand that I assume all risks of non-vaccination.**

By my signature below, I am attesting under oath that I have a sincerely held religious observance, practice, and/or belief that conflicts with the COVID vaccine mandate. I also understand that if any of the information I provide below is false or not complete, the exemption may be revoked and I may be subject to disciplinary action, up to and including termination from employment.

With those understandings, I am requesting an accommodation and providing the following information to assist in my request.  (Attach additional documentation, if necessary.)

1.  What is the religion or religious organization for which you are seeking an accommodation?

    Christian____Word of Life Community Church

2.  What is the name, title, address and contact information, if any, of the leader of the religious organization?

    Name  Donat Boucher

    Title   Pastor

    Address: 1647 Robeson st Fall River Ma 02720

    Telephone number/email: 401 281 9215

3. What is the specific sincerely held religious belief, observance or practice for which you are seeking an accommodation  See Attached in my file _____

_____

4. Describe the conflict between your specific sincerely held religious belief, observance and/or practice with the requirement that you be fully vaccinated from COVID-19 by the deadline imposed by the Authority. _____

See attached in my file _____

_____

5. How long will you need an accommodation for the identified sincerely held religious practice, observance and/or belief?  Always _____

6. Do you have any suggestions for possible accommodations  No vaccine mandates

_____

_____

_____

7. Is there any other information that you believe will assist us in our consideration of your request? For example, whether your religious objection is to the use of all vaccines, the COVID-19 vaccines, a specific type of COVID-19 vaccine, or some other subset of vaccines.

My faith is against all vaccines. God has designed the perfect immune system for me

_____

_____

The above information is complete and accurate to the best of my knowledge and belief.

Signature of Employee:_____Steven Ennis_____

Date:____1/10/22

## Request for Reasonable Accommodation:  Medical / COVID-19 Vaccine

**TO BE COMPLETED BY THE EMPLOYEE:**

Name of Employee: *Steven Ennis*  Position held by Employee: *oiler*

Phone Number: *508-951-5841*

## TO BE COMPLETED BY THE HEALTH CARE PROVIDER:

Your patient is an employee of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (the "Authority") and the Authority has adopted a mandatory vaccination policy with respect to COVID-19.  Your patient has requested an accommodation and/or exemption to the mandatory COVID-19 vaccination requirement for medical reasons.  The Authority needs to evaluate this request and discuss it with the employee.  As a result, we are making inquiry as to whether the employee is suffering from a medical impairment that constitutes a disability.  If so, the Authority needs to understand whether the administration of the vaccine to the employee is contraindicated, i.e., it is likely to be detrimental to the individual's health, and what various accommodations may exist and whether any accommodations may exist and/or allow the employee to fully perform their essential job functions.

Please complete this form and return it to my attention on or before January 5, 2022.  Please attach additional pages as necessary.

1. Please state whether the employee has a medical impairment:
   ☑ YES   ☐ NO

2. If yes, does the medical impairment limit the employee from engaging in major life activity/activities? ☐ YES   ☑ NO

3. If the answer to Question #2 is "YES", is the medical impairment contraindicated to the employee receiving all of the available COVID-19 vaccinations, i.e., will "the administration of the vaccine likely be detrimental to the individual's health?"

   ☐ YES       ☐ NO

   If "yes," please briefly explain how each vaccine (Moderna, Pfizer, J&J) will be detrimental to the employee's health and/or why the employee should not receive each of the COVID-19 vaccines.  If one of the vaccines is not detrimental, please identify which one:

   _____
   _____
   _____
   _____

4. Is the condition with prevents the employee from receiving the COVID-19 vaccine a:
   ☐ Temporary Medical Impairment       ☑ Permanent/Long Term Medical Impairment

5. If the request is due to a temporary medical impairment, please state the approximate duration of the medical impairment and when the employee may be able to receive a COVID-19 vaccine: _____

6. Is there any other information that you believe will assist us in our consideration of the employee's request? _Severe Allergic Anaphylactic Reaction_

_1/6/2022_

**Date Completed**

**Signature of Medical Provider**

**Print Name & Title of Medical Provider**

_Patel Tushar MD_

**Provider's Address & Phone #**

_827, Pleasant St,
New Bedford MA—02740
785 997-2360_

Should you have any questions, please contact me.  Thank you.

Janice Kennefick or Terence Kenneally
508-548-5011 ext. 206 or ext. 301

---

### DEFINITIONS

**Major Life Activity:**  Examples of a major life activity are the following: caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, lifting, bending, communicating, sleeping, interacting with others, working and the operation of major bodily functions. **Important:** this is a non-exhaustive list.

**Limit/Limited:**  Means that the employee is unable to perform a major life activity, or is restricted in the condition, manner or duration in which they perform it as compared to the average person in the general population.

**Accommodation:**  An accommodation is any modification or adjustment to a job, an employment practice, or the work environment that makes it possible for an individual with a disability to perform the essential functions of his or her job.  Examples of accommodations include reallocating marginal functions of a job, modifying work schedules, providing unpaid leave, providing or modifying equipment or devices, providing training, etc.

Please be advised: THE GENETIC INFORMATION NONDISCRIMINATION ACT OF 2008 (GINA) PROHIBITS EMPLOYERS AND OTHER ENTITIES COVERED BY GINA TITLE II FROM REQUESTING OR REQUIRING GENETIC INFORMATION OF EMPLOYEES OR THEIR FAMILY MEMBERS. IN ORDER TO COMPLY WITH THIS LAW, WE ARE ASKING THAT YOU NOT PROVIDE ANY GENETIC INFORMATION WHEN RESPONDING TO THIS REQUEST FOR MEDICAL INFORMATION. 'GENETIC INFORMATION,' AS DEFINED BY GINA, INCLUDES AN INDIVIDUAL'S FAMILY MEDICAL HISTORY, THE RESULTS OF AN INDIVIDUAL'S OR FAMILY MEMBER'S GENETIC TESTS, THE FACT THAT AN INDIVIDUAL OR AN INDIVIDUAL'S FAMILY MEMBER SOUGHT OR RECEIVED GENETIC SERVICES. AND GENETIC INFORMATION OF A FETUS CARRIED BY AN INDIVIDUAL OR AN INDIVIDUAL'S FAMILY MEMBER OR AN EMBRYO LAWFULLY HELD BY AN INDIVIDUAL OR FAMILY MEMBER RECEIVING ASSISTIVE REPRODUCTIVE SERVICES.

## Request for Reasonable Accommodation:  Religion / COVID-19 Vaccine

Date:

Name of Employee: MARK ANDERSON    Position held by Employee: OS/AG/BOSUN

Phone Number: 8o)785-5476

I understand that it is the policy of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (the "Authority") that I become fully vaccinated against COVID-19 by February 16, 2022.  The Authority's vaccine mandate is based on our commitment to providing a safe, inclusive and supportive experience for all and recognizes true and genuine observance of faith as it pertains to the practice of immunization.  In order to request an accommodation based on a sincerely held religious belief, an employee must complete and sign the form below, and otherwise provide materials requested by the Authority.  The Authority will consider the request and respond after reviewing the information submitted.

Individuals with an approved exemption may be required to comply with COVID-19 testing and other preventative requirements as specified by the Authority, and as may be updated from time to time.  **By signing below, if an exemption is granted, I acknowledge that I will follow any such COVID-19 protocols applicable to me.  I understand that I assume all risks of non-vaccination.**

By my signature below, I am attesting under oath that I have a sincerely held religious observance, practice, and/or belief that conflicts with the COVID vaccine mandate.  I also understand that if any of the information I provide below is false or not complete, the exemption may be revoked and I may be subject to disciplinary action, up to and including termination from employment.

With those understandings, I am requesting an accommodation and providing the following information to assist in my request.  (Attach additional documentation, if necessary.)

1. What is the religion or religious organization for which you are seeking an accommodation?

   _SEE ATTACHED ("S/A")_

2. What is the name, title, address and contact information, if any, of the leader of the religious organization?

   Name: _S/A_

   Title: _____

   Address: _____

   Telephone number/email: _____

3. What is the specific sincerely held religious belief, observance or practice for which you are seeking an accommodation? _____

S/A

4. Describe the conflict between your specific sincerely held religious belief, observance and/or practice with the requirement that you be fully vaccinated from COVID-19 by the deadline imposed by the Authority._____

S/A

5. How long will you need an accommodation for the identified sincerely held religious practice, observance and/or belief?    S/A

6. Do you have any suggestions for possible accommodations? _____

S/A

7. Is there any other information that you believe will assist us in our consideration of your request? For example, whether your religious objection is to the use of all vaccines, the COVID-19 vaccines, a specific type of COVID-19 vaccine, or some other subset of vaccines.

S/A

The above information is complete and accurate to the best of my knowledge and belief.

Signature of Employee: _____

Date: 01/06/2022

REQUEST FOR REASONABLE ACCOMMODATION: RELIGIOUS/COVID-19 VACCINE

MARK ANDERSON
OS/AB/BOSUN
(860) 985-5476

TO WHOM IT MAY CONCERN:

THIS LETTER IS MY REQUEST FOR REASONABLE ACCOMMODATION,
AS I AM EXEMPT FROM THE COVID 19 VACCINE BASED ON MY SINCERELY
HELD RELIGIOUS BELIEFS.

I WAS BORN A CHRISTIAN, AND HAVE ALWAYS BEEN SO. I HAVE
TAKEN TIME TO PRAY TO MY LORD AND SAVIOR JESUS CHRIST, AND
I TRUSTED THAT HE WOULD PROVIDE ME WITH THE ANSWERS I
SOUGHT. MY PERSONAL RELATIONSHIP WITH JESUS CHRIST AND HIS
WORD HAS BROUGHT ME GREAT SOLACE IN TRYING TIMES. THE
PASSING OF MY FATHER, AND HIS ABSENCE IN MY LIFE, HAS BEEN
A PRIMARY DRIVING FORCE IN MY RELATIONSHIP WITH CHRIST. I
TURN TO PRAYER FOR MANY REASONS; FOR SOLACE, FOR FORGIVENESS,
FOR THE SOULS OF THOSE WHO DO EVIL, AND FOR THE SOULS OF THE INNOCENT,
FOR OTHERS WHO SUFFER A GREAT LOSS TO FIND THE SAME SOLACE IN HIS
WORD THAT I DO.

I OFTEN TURN TO HIS WORD FOR GUIDANCE WHEN I AM UNSURE
OF THE PATH THAT LAY AHEAD OF ME. SOMETHING THAT SERVES ME
BEST HERE IN MY EARTHLY LIFE IS THE WISDOM HIS WORD PRO-
VIDES. THE TOPIC OF WISDOM IS MENTIONED 367 TIMES IN THE
BIBLE. NOTABLY, THE SEEKING OF ANSWERS, ie: THROUGH PRAYER, IS
MENTIONED 693 TIMES.

SO, I HAVE READ PASSAGE, AFTER PASSAGE, AFTER PASSAGE,
BEGGING JESUS TO ANSWER MY QUESTIONS, BEGGING FOR THE
GUIDANCE, THAT HE HAS PROVIDED ME WITH, SO MANY TIMES
IN THE PAST. I HAVE PRAYED, AND PRAYED, AND PRAYED.

REQUEST FOR REASONABLE ACCOMMODATION : RELIGIOUS / COVID 19 VACCINE

MARK ANDERSON
OS/AB/BOSUN
(860) 985-5476

FINALLY, I AM AT PEACE, AS HE HAS SEEN FIT, IN HIS TIME, TO PLACE HIS ANSWER IN MY HEART. JESUS TELLS ME THAT IT IS UNWISE TO PUT THE COVID VACCINE INTO MY BODY, HIS CREATION.

THE ACCOMMODATION THAT I REQUEST, IS TO SIMPLY ABIDE BY THE MEASURES ALREADY IN PLACE, AS THE COMPANY HAS DEMONSTRATED THAT THEY DO NOT IMPOSE A HARDSHIP ON OPERATIONS. NAMELY, WEARING A MASK, FILLING OUT A QUESTION-NAIRE, AND TEMP. SCANNING UPON PUNCHING IN.

THANK YOU FOR TAKING THE TIME TO LET ME EXPLAIN MY SINCERELY HELD RELIGIOUS BELIEFS, AND FOR CONSIDERING MY RE-QUEST FOR REASONABLE ACCOMMODATION.

RESPECTFULLY SUBMITTED,

Andrea Sheedy      Employee #4096

As an initial matter, please know that we are respectful of your beliefs but need additional information to better understand them in order to consider your religious accommodation request.

1. Are you a member of a particular parish or church? If so, what is the name of your parish or church and how long have you been a member?

Yes. St. Anthony's - Since Birth

2. Please explain why your religious beliefs or practices prevent you from being vaccinated for Covid-19.

I'm afraid it will kill me. God is the only one that can decide that.

3. How long have you adhered to these beliefs or practices?

All my life.

4. When did you first begin to adhere to these beliefs or practices – and particularly as they relate to vaccination?

Since February 2015 when my daughter died of a heroin overdose

5. In what ways do you practice abiding by these beliefs?

I do not take any medications that involve injection.

6. Is it only the Covid 19 vaccine that interferes with these religious beliefs?

No

7. Have you received any other vaccinations during the time you held these religious beliefs? Flu? MMR? Tetanus? Shingles? Hepatitis C? Other?

Not since 2015

8. If so, why did your beliefs not prevent you from having that vaccination as opposed to the COVID 19 vaccine?

Other vaccinations are not in trial period.

9. Explain what accommodation you are seeking and how it allows you to perform the essential functions of your job without, for example, negatively impacting workplace safety or efficiency?

Religious. My choice has never made me miss one day of work

10. Besides vaccines, do your religious beliefs prevent you from being tested for COVID 19? Please note, testing is typically simply a swab without an injection or piercing of the skin.

No

11. Any additional information regarding your beliefs or practices that support your request for a religious accommodation?

NO

Please respond with your answers to these inquiries by Monday, January 17, 2022 so we may promptly complete a review of your request.

Thank you,
Janice Kennefick

Andrea Sheedy   1/17/22

3.    What is the specific sincerely held religious belief, observance or practice for which you are seeking an accommodation?

I believe whole heartedly that our bodies are a temple created by God. We were born with an immune system to protect our bodies from harmful substances, germs and cell changes that can make us ill.

4.    Describe the conflict between your specific sincerely held religious belief observance and/or practice with the requirement that you be full vaccinated from COVID-19 by the deadline imposed by the authority.

Using genetically engineered envelopes such as mRNA that have shown ineffectiveness to work as intended to trick our bodies to fight somethings we were made to defend goes against why God created us the way He did. HEK 293, PER C-6, WI-38 and MRC-5 are cell lines derived from human embryonic kidney cells in live and aborted fetus to assist in the development of vaccines.

5.    How long will you need the accommodation for?

As long as these mandates for vaccines and boosters continue.

6.    Do you have any suggestions for any possible accommodations?

My suggestion would be that you take full consideration into why I am seeking this accommodation. My Medical Freedom is a CHOICE that I have regardless of the state of the world. I am fighting for my grandchildren's future. Showing them to not be bullied into taking something they do not morally believe to be true. I hope that you take into consideration that not everyone needs a church or a pew to practice religion but simply faith in God our creator.

7.    Is there any other information that you believe will assist us in our consideration of your request? For example, whether your religious objection is to the use of all vaccines, COVID-19 vaccine, or some other subset of vaccines.

Prior to this COVID-19 pandemic my views on vaccines were that they were helpful due to extensive research over an extended amount of time. Over the last 22 months we have seen narratives change on how ineffective these vaccines and boosters truly are. I have yet to miss one day of work due to COVID-19 and will continue to do my best to keep it that way.

The above information is complete and accurate to the best of my knowledge and belief.

Signature of Employee: _Andrea Sheedy_

Date: _January     2022_

Captain Brox:

As an initial matter, please know that we are respectful of your beliefs but need additional information to better understand them in order to consider your religious accommodation request.

1. **Are you a member of a particular parish or church?  If so, what is the name of your parish or church and how long have you been a member?**
   Yes, I have been a member of OLV in Centerville MA and the sister church OLA in Osterville MA for about 25 years. I was raised Catholic and attended a Catholic HS

2. **Please explain why your religious beliefs or practices prevent you from being vaccinated for Covid-19.**
   My personal Christian based beliefs and my personal relationship with my Creator and God who has guided me most of my life. Through prayer with my Creator, I believe my God will guide and protect me and has told me to not get this vaccine at this time.

3. **How long have you adhered to these beliefs or practices?**
   In my personal relationship with God, through prayer, has helped me make decisions for most of my life.  My Creator has protected and guided me since being adopted as an infant and throughout my life.

4. **When did you first begin to adhere to these beliefs or practices – and particularly as they relate to vaccination?**
   Most of my life.  My personal relationship with God has guided me with many decisions in my life. For me this is not about vaccinations rather this is about these new mRNA tech vaccines.

5. **In what ways do you practice abiding by these beliefs?**
   Through prayer in asking for help and guidance to make decisions.

6. **Is it only the Covid 19 vaccine that interferes with these religious beliefs?**
   As of now yes.

7. **Have you received any other vaccinations during the time you held these religious beliefs? Flu? MMR? Tetanus? Shingles?  Hepatitis C?  Other?**
   This is not relevant to me. These new tech mRNA vaccines have a very short safety record.  New mRNA vaccine tech with little data on long term safety led me to consider the risk/reward and wisdom of the necessity.  Through prayer I believe the right decision for me is to not be injected at present.

8. **If so, why did your beliefs not prevent you from having that vaccination as opposed to the COVID 19 vaccine?**
   Not applicable

9. **Explain what accommodation you are seeking and how it allows you to perform the essential functions of your job without, for example, negatively impacting workplace safety or efficiency?**

   I will meet the requirements outlined in the SSA memo of 1.3.2022.

10. **Besides vaccines, do your religious beliefs prevent you from being tested for COVID 19?  Please note, testing is typically simply a swab without an injection or piercing of the skin.**

    No

11. **Any additional information regarding your beliefs or practices that support your request for a religious accommodation ?**

    Prayer and my personal connection with my God has assisted me to make decisions in my life. I feel I have been protected and looked over and made decisions that have been right.

Please respond with your answers to these inquiries by Monday, January 10, 2022 by 12:00 noon so we may promptly complete a review of your request.

Thank you,
Janice

## Request for Reasonable Accommodation:  Religion / COVID-19 Vaccine

Date: 1/5/2022

Name of Employee: *Christopher Ovaska* Position held by Employee: *Terminal worker*

Phone Number: 508-209-8779

I understand that it is the policy of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (the "Authority") that I become fully vaccinated against COVID-19 by February 16, 2022.  The Authority's vaccine mandate is based on our commitment to providing a safe, inclusive and supportive experience for all and recognizes true and genuine observance of faith as it pertains to the practice of immunization.  In order to request an accommodation based on a sincerely held religious belief, an employee must complete and sign the form below, and otherwise provide materials requested by the Authority.  The Authority will consider the request and respond after reviewing the information submitted.

Individuals with an approved exemption may be required to comply with COVID-19 testing and other preventative requirements as specified by the Authority, and as may be updated from time to time.  **By signing below, if an exemption is granted, I acknowledge that I will follow any such COVID-19 protocols applicable to me.  I understand that I assume all risks of non-vaccination.**

By my signature below, I am attesting under oath that I have a sincerely held religious observance, practice, and/or belief that conflicts with the COVID vaccine mandate.  I also understand that if any of the information I provide below is false or not complete, the exemption may be revoked and I may be subject to disciplinary action, up to and including termination from employment.

With those understandings, I am requesting an accommodation and providing the following information to assist in my request.  (Attach additional documentation, if necessary.)

1. What is the religion or religious organization for which you are seeking an accommodation?

   *Christian, Anglican Church of the Resurrection*

2. What is the name, title, address and contact information, if any, of the leader of the religious organization?

   Name: *Father Alan Wilmot*

   Title: *Pastor*

   Address: *94 King James Drive, S. Dennis MA 02660*

   Telephone number/email: *508-896-2550 / wingchaps@gmail.com*

3. What is the specific sincerely held religious belief, observance or practice for which you are seeking an accommodation? _I want to express my religious conviction against taking any of the COVID-19 vaccines._

4. Describe the conflict between your specific sincerely held religious belief, observance and/or practice with the requirement that you be fully vaccinated from COVID-19 by the deadline imposed by the Authority. _All of the covid vaccines were manufactured and/or tested with animal products and aborted fetal tissue, It would be a sin to take the vaccine_

5. How long will you need an accommodation for the identified sincerely held religious practice, observance and/or belief? _There is no expiration to this sin._

6. Do you have any suggestions for possible accommodations? _I work outdoors, I will wear a mask when I'm near anyone, I will not come to work if I have any covid symptoms._

7. Is there any other information that you believe will assist us in our consideration of your request? For example, whether your religious objection is to the use of all vaccines, the COVID-19 vaccines, a specific type of COVID-19 vaccine, or some other subset of vaccines. _This applies to all covid-19 vaccines and to any other vaccines that were made or tested with aborted fetal tissue or animal matter_

The above information is complete and accurate to the best of my knowledge and belief.

Signature of Employee: _Christopher O'vaska_

Date: _1/5/2022_

Mail body: Fwd: Religious exemption form

---------- Forwarded message ---------
From: **Christopher Ovaska** <chris.ovaska@gmail.com>
Date: Sun, Jan 16, 2022, 6:53 PM
Subject: Religious exemption form
To: Christopher Ovaska <chris.ovaska@gmail.com>

1. Are you a member of a particular parish or church? If so, what is the name of your parish or church and how long have you been a member?

You do not have to be a member of a church in order to read the Bible for yourself, or worship Jesus, or try to follow him. I joined the Anglican Church of the Resurrection over a month ago, though, because they're good people and Father Alan has been helpful to me.

2. Please explain why your religious beliefs or practices prevent you from being vaccinated for Covid-19.

The short answer is that when the Covid vaccine came out, people checked them out and found that they all were made or tested with aborted fetal tissue. I believe that life begins at conception, I'm very pro-life, and I can't have anything to do with abortion. There are other ways the vaccines contradict the Bible, but that's the big one.

3. How long have you adhered to these beliefs or practices?

I have been pro-life for 15 years I am anti-abortion

4. When did you first begin to adhere to these beliefs or practices - and particularly as they relate to vaccination?

I have been Christian for 15 years regarding vaccines, I've held these beliefs for as long as I've been pro-life. Whether or not a vaccine or medicine was made or tested with aborted fetal tissue is not common knowledge, when I find out, I avoid those.

5. In what ways do you practice abiding by these beliefs?

Christian beliefs? I follow the Ten Commandments, I follow the summary of the law (Love the Lord your God with all your heart, mind, and soul, and your neighbor as yourself), I live by the Golden Rule, and everything else in the Bible. Regarding vaccines, when I find out they were made or tested with aborted fetal cells, I avoid them.

6. Is it only the Covid-19 vaccine that interferes with these religious beliefs?

I have found out that is not, reportedly all vaccines were made or tested that way.

7. Have you received any other vaccinations during the time you held these religious beliefs? Flu? MMR? Tetanus? Shingles? Hepatitis C? Other?

If I did, it's because I did not know how they were made. It isn't common knowledge.

8. If so, why did your beliefs not prevent you from having that vaccination as opposed to the Covid-19 vaccine?

As I said, it isn't common knowledge, and I didn't know. Because the Covid vaccine is being forced on people, they looked into it and found out.

9. Explain what accommodations you are seeking and how it allows you to preform the essential functions of your job without, for example, negatively impacting workplace safety or efficiency?

In some places they're letting vaccinated people who had Covid come back to work as long as they're not symptomatic. I won't come to work if I have symptoms, I'll wear a mask when I'm near anyone else.

10. Besides vaccines, do your religious beliefs prevent you from being tested for Covid-19? Please note, testing is typically simply a swab without an injection or piercing of the skin.

No, my religious beliefs do not prevent me from being tested.

11. Any additional information regarding your beliefs or practices that support your request for a religious accommodation?

My pastor would be happy to come down and discuss my religious beliefs with you.

Christopher Ovaska
1/16/2022

# EXHIBIT 4

## Request for Reasonable Accommodation:  Religion / COVID-19 Vaccine

Date:  2/4/22

Name of Employee:  Jeffery D'Amario        Position held by Employee:  Ticket Seller

Phone Number:  508-566-6204

I understand that it is the policy of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (the "Authority") that I become fully vaccinated against COVID-19 by February 16, 2022.  The Authority's vaccine mandate is based on our commitment to providing a safe, inclusive and supportive experience for all and recognizes true and genuine observance of faith as it pertains to the practice of immunization.  In order to request an accommodation based on a sincerely held religious belief, an employee must complete and sign the form below, and otherwise provide materials requested by the Authority.  The Authority will consider the request and respond after reviewing the information submitted.

Individuals with an approved exemption may be required to comply with COVID-19 testing and other preventative requirements as specified by the Authority, and as may be updated from time to time.  **By signing below, if an exemption is granted, I acknowledge that I will follow any such COVID-19 protocols applicable to me.  I understand that I assume all risks of non-vaccination.**

By my signature below, I am attesting under oath that I have a sincerely held religious observance, practice, and/or belief that conflicts with the COVID vaccine mandate.  I also understand that if any of the information I provide below is false or not complete, the exemption may be revoked and I may be subject to disciplinary action, up to and including termination from employment.

With those understandings, I am requesting an accommodation and providing the following information to assist in my request.  (Attach additional documentation, if necessary.)

1.  What is the religion or religious organization for which you are seeking an accommodation?

    Pagan (nature worship)

2.  What is the name, title, address and contact information, if any, of the leader of the religious organization?

    Name:  not applicable - solitary practioner

    Title:

    Address:

    Telephone number/email:

3. What is the specific sincerely held religious belief, observance or practice for which you are seeking an accommodation?   As a pagan, I worship nature and believe the the power of plant medicine to heal,
   I grow my own herbs to make natural medicine

4. Describe the conflict between your specific sincerely held religious belief, observance and/or practice with the requirement that you be fully vaccinated from COVID-19 by the deadline imposed by the Authority.   I worship nature and believe in the use of natural medicine to keep myself                     healthy.
   I also live a lifestyle of wellness and am vegetarian, I am very choosy about what I consume.

   Due to this lifestyle, I am a very healthy individual.

5. How long will you need an accommodation for the identified sincerely held religious practice, observance and/or belief?   Until a time when a time when the vaccine mandate is lifted my religious beliefs are not subject to change.

6. Do you have any suggestions for possible accommodations? _____
   Grant my religious exemption from the SSA mandated COVID-19 vaccine and in keeping

   with the 1st Amendment & EEOC Title VII

7. Is there any other information that you believe will assist us in our consideration of your request? For example, whether your religious objection is to the use of all vaccines, the COVID-19 vaccines, a specific type of COVID-19 vaccine, or some other subset of vaccines.

   Since I have been old enough to make informed consent , I have not been vaccinated.

The above information is complete and accurate to the best of my knowledge and belief.

Signature of Employee: _Jeffery D'Amario_____

Date: _2/4/22_____

**From:** Jeff Damario heffstron@gmail.com
**Subject:** Fwd: Reilgious exemption form
**Date:** February 4, 2022 at 3:52 PM
**To:** daubertlaw@icloud.com

Hi Patrick
Fastest response I've gotten from them

---------- Forwarded message ----------
From: **Janice Kennefick** <jkennefick@steamshipauthority.com>
Date: Fri, Feb 4, 2022, 3:48 PM
Subject: RE: Reilgious exemption form
To: Jeff Damario <helfstron@gmail.com>
Cc: jsharp@local59.org <jsharp@local59.org>, Jeff D'Amario <helfstron@aol.com>

Good afternoon,

I am in receipt of your email regarding the religious exemption, however we are no longer accepting exemptions – religious or medical.  The deadline remains February 16, 2022 to become vaccinated.

Please contact me directly should there be any questions.

Thank you.

Janice

From: Jeff Damario <helfstron@gmail.com>
Sent: Friday, February 4, 2022 8:31 AM
To: Janice Kennefick <jkennefick@steamshipauthority.com>
Cc: jsharp@local59.org; Jeff D'Amario <helfstron@aol.com>
Subject: Fwd: Reilgious exemption form

Good morning ,

    Attached please find my religious exemption form for review .

Please kindly confirm receipt of this email.

Sincerely .

Jeffery

**From:** Sonia Sim stms12@gmail.com ✐
**Subject:** Fwd: Religious exemption Sonia Simoneau
**Date:** February 4, 2022 at 3:48 PM
**To:** Patrick Daubert daubertlaw@icloud.com

---------- Forwarded message ----------
**From: Janice Kennefick** <jkennefick@steamshipauthority.com>
Date: Fri, Feb 4, 2022, 3:47 PM
Subject: RE: Religious exemption Sonia Simoneau
To: Sonia Sim <stms12@gmail.com>, rsharp@local59.org <rsharp@local59.org>, Lisa Goldsmith <lgoldsmith@steamshipauthority.com>

Hi Sonia,

I am in receipt of your email with the attached religious exemption, however we are no longer accepting exemptions – religious or medical. The deadline remains February 16, 2022 to become vaccinated.

Please contact me directly should there be any questions.

Thank you

Janice

**From: Sonia Sim** <stms12@gmail.com>
**Sent: Friday, February 4, 2022 2:38 PM**
**To: Janice Kennefick** <jkennefick@steamshipauthority.com>; rsharp@local59.org; Lisa Goldsmith <lgoldsmith@steamshipauthority.com>
**Subject: Religious exemption Sonia Simoneau**

Good afternoon, attached you will find my religious exemption form. If you could please confirm receiving this email.
          Thank you,                      Sonia Simoneau

religious exemption.pdf

## Request for Reasonable Accommodation:  Religion / COVID-19 Vaccine

Date:  2/4/22

Name of Employee:  Sonia Simoneau          Position held by Employee:  Ticket Seller

Phone Number:  774-836-6525

I understand that it is the policy of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (the "Authority") that I become fully vaccinated against COVID-19 by February 16, 2022.  The Authority's vaccine mandate is based on our commitment to providing a safe, inclusive and supportive experience for all and recognizes true and genuine observance of faith as it pertains to the practice of immunization.  In order to request an accommodation based on a sincerely held religious belief, an employee must complete and sign the form below, and otherwise provide materials requested by the Authority.  The Authority will consider the request and respond after reviewing the information submitted.

Individuals with an approved exemption may be required to comply with COVID-19 testing and other preventative requirements as specified by the Authority, and as may be updated from time to time.  **By signing below, if an exemption is granted, I acknowledge that I will follow any such COVID-19 protocols applicable to me.  I understand that I assume all risks of non-vaccination.**

By my signature below, I am attesting under oath that I have a sincerely held religious observance, practice, and/or belief that conflicts with the COVID vaccine mandate.  I also understand that if any of the information I provide below is false or not complete, the exemption may be revoked and I may be subject to disciplinary action, up to and including termination from employment.

With those understandings, I am requesting an accommodation and providing the following information to assist in my request.  (Attach additional documentation, if necessary.)

1.  What is the religion or religious organization for which you are seeking an accommodation?

    Cathloic

2.  What is the name, title, address and contact information, if any, of the leader of the religious organization?

    Name:  pratice at home

    Title:

    Address:

    Telephone number/email:

3. What is the specific sincerely held religious belief, observance or practice for which you are seeking an accommodation?   As a Catholic, I have more beliefs in my God given immune system, than I do big pharma & the toxic ingredients in the covid 19 vaccines.

4. Describe the conflict between your specific sincerely held religious belief, observance and/or practice with the requirement that you be fully vaccinated from COVID-19 by the deadline imposed by the Authority.   I have a strong belief thant natural & ancient remedies are what God intended me to use, to prevent and help cure illness. I am a very healthy young woman and exercise regularly. I have done so for my 24 year career there, flawlessly.

5. How long will you need an accommodation for the identified sincerely held religious practice, observance and/or belief?   Until a time the vaccine mandate is lifted, my religious beliefs are not subject to change.

6. Do you have any suggestions for possible accommodations?
   Grant my religious exemption from the SSA mandated covid 19 vaccine a and keeping with the 1st amendment & EEOC title VII.

7. Is there any other information that you believe will assist us in our consideration of your request? For example, whether your religious objection is to the use of all vaccines, the COVID-19 vaccines, a specific type of COVID-19 vaccine, or some other subset of vaccines.
   Since I have been old enough to make my informed consent, I have not been vaccinated.

The above information is complete and accurate to the best of my knowledge and belief.

Signature of Employee:   *Sonia Simoneau*

Date:   **2/4/22**

# EXHIBIT 5



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority

January 24, 2022

Mr. Paul Menton
121 Jamie Lane
East Falmouth, MA 02536

Dear Mr. Menton:

We appreciate your request to be exempted from the Authority's COVID-19 Vaccination Verification Policy ("the Policy"). After consideration and review of the information and documentation that you submitted, we are unable to approve your request due to the direct threat your unvaccinated status would pose to the health and well-being of your fellow employees, our customers and/or our vendors. Due to the nature of your position as an AB/Pilot, you are expected and required to interact daily in person with your fellow employees, our customers and/or our vendors.  Accordingly, we determined that an exemption from the Policy would unreasonably risk their safety as well as your own.

Your supervisor will be aware that you remain out-of-compliance with the Policy. You have three (3) calendar days from the date of this letter to get your first shot of a vaccine authorized or approved for use by the Food and Drug Administration (FDA) or the World Health Organization (WHO) or disciplinary action will commence. Your manager will also be able to provide supportive resources and review the next steps with you.

Please be assured that our decision did not come easily as we realize it may affect your employment with us. As we balance our respect for employees' decisions about whether to be vaccinated, we also take seriously our role as a public transit authority committed to the safety and well-being of our customers, employees and the communities we serve.

Sincerely,

Janice Kennefick
Director of Human Resources

cc:     Jeff Sharp – Union Representative

Our mission is to operate a safe, efficient, and reliable transportation system
for the islands of Martha's Vineyard and Nantucket with a commitment to
sustainability, accessibility, our port communities, and public engagement.

**228 Palmer Avenue**
**Falmouth, MA 02540**
**(508) 548-5011**



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority

January 24, 2022

Mr. Steven Ennis
19 Lebaron Way
Mattapoisett, MA 02739

Dear Mr. Ennis:

We appreciate your request to be exempted from the Authority's COVID-19 Vaccination Verification Policy ("the Policy"). After consideration and review of the information and documentation that you submitted, we are unable to approve your request due to the direct threat your unvaccinated status would pose to the health and well-being of your fellow employees, our customers and/or our vendors. Due to the nature of your position as an Oiler, you are expected and required to interact daily in person with your fellow employees, our customers and/or our vendors. Accordingly, we determined that an exemption from the Policy would unreasonably risk their safety as well as your own.

Your supervisor will be aware that you remain out-of-compliance with the Policy. You have three (3) calendar days from the date of this letter to get your first shot of a vaccine authorized or approved for use by the Food and Drug Administration (FDA) or the World Health Organization (WHO) or disciplinary action will commence. Your manager will also be able to provide supportive resources and review the next steps with you.

Please be assured that our decision did not come easily as we realize it may affect your employment with us. As we balance our respect for employees' decisions about whether to be vaccinated, we also take seriously our role as a public transit authority committed to the safety and well-being of our customers, employees and the communities we serve.

Sincerely,

Janice Kennefick
Janice Kennefick
Director of Human Resources

cc:     Jeff Sharp – Union Representative

Our mission is to operate a safe, efficient, and reliable transportation system for the islands of Martha's Vineyard and Nantucket with a commitment to sustainability, accessibility, our port communities, and public engagement.

228 Palmer Avenue
Falmouth, MA 02540
(508) 548-5011



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority

January 24, 2022

Mr. Mark Anderson
6 Brightman Court
New Bedford, MA  02745

Dear Mr. Anderson:

We appreciate your request to be exempted from the Authority's COVID-19 Vaccination Verification Policy ("the Policy"). After consideration and review of the information and documentation that you submitted, we are unable to approve your request due to the direct threat your unvaccinated status would pose to the health and well-being of your fellow employees, our customers and/or our vendors. Due to the nature of your position as an AB/Pilot, you are expected and required to interact daily in person with your fellow employees, our customers and/or our vendors.  Accordingly, we determined that an exemption from the Policy would unreasonably risk their safety as well as your own.

Your supervisor will be aware that you remain out-of-compliance with the Policy. You have three (3) calendar days from the date of this letter to get your first shot of a vaccine authorized or approved for use by the Food and Drug Administration (FDA) or the World Health Organization (WHO) or disciplinary action will commence. Your manager will also be able to provide supportive resources and review the next steps with you.

Please be assured that our decision did not come easily as we realize it may affect your employment with us. As we balance our respect for employees' decisions about whether to be vaccinated, we also take seriously our role as a public transit authority committed to the safety and well-being of our customers, employees and the communities we serve.

Sincerely,

Janice Kennefick
Director of Human Resources

cc:    Jeff Sharp – Union Representative

Our mission is to operate a safe, efficient, and reliable transportation system for the islands of Martha's Vineyard and Nantucket with a commitment to sustainability, accessibility, our port communities, and public engagement.

228 Palmer Avenue
Falmouth, MA 02540
(508) 548-5011



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority

January 24, 2022

Mr. James Bondarek
PO Box 2939
Nantucket, MA 02584

Dear Mr. Bondarek:

We appreciate your request to be exempted from the Authority's COVID-19 Vaccination Verification Policy ("the Policy"). After consideration and review of the information and documentation that you submitted, we are unable to approve your request due to the direct threat your unvaccinated status would pose to the health and well-being of your fellow employees, our customers and/or our vendors. Due to the nature of your position as a Purser, you are expected and required to interact daily in person with your fellow employees, our customers and/or our vendors. Accordingly, we determined that an exemption from the Policy would unreasonably risk their safety as well as your own.

Your supervisor will be aware that you remain out-of-compliance with the Policy. You have three (3) calendar days from the date of this letter to get your first shot of a vaccine authorized or approved for use by the Food and Drug Administration (FDA) or the World Health Organization (WHO) or disciplinary action will commence. Your manager will also be able to provide supportive resources and review the next steps with you.

Please be assured that our decision did not come easily as we realize it may affect your employment with us. As we balance our respect for employees' decisions about whether to be vaccinated, we also take seriously our role as a public transit authority committed to the safety and well-being of our customers, employees and the communities we serve.

Sincerely,

Janice Kennefick
Director of Human Resources

cc:     Jeff Sharp – Union Representative

Our mission is to operate a safe, efficient, and reliable transportation system for the islands of Martha's Vineyard and Nantucket with a commitment to sustainability, accessibility, our port communities, and public engagement.

228 Palmer Avenue
Falmouth, MA 02540
(508) 548-5011



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority

January 24, 2022

Ms. Andrea Sheedy
19 Corrine Drive
East Falmouth, MA 02536

Dear Ms. Sheedy,

We appreciate your request to be exempted from the Authority's COVID-19 Vaccination Verification Policy ("the Policy"). After consideration and review of the information and documentation that you submitted, we are unable to approve your request due to the direct threat your unvaccinated status would pose to the health and well-being of your fellow employees, our customers and/or our vendors. Due to the nature of your position as a Ticket Seller, you are expected and required to interact daily in person with your fellow employees, our customers and/or our vendors.  Accordingly, we determined that an exemption from the Policy would unreasonably risk their safety as well as your own.

Your supervisor will be aware that you remain out-of-compliance with the Policy. You have three (3) calendar days from the date of this letter to get your first shot of a vaccine authorized or approved for use by the Food and Drug Administration (FDA) or the World Health Organization (WHO) or disciplinary action will commence. Your manager will also be able to provide supportive resources and review the next steps with you.

Please be assured that our decision did not come easily as we realize it may affect your employment with us. As we balance our respect for employees' decisions about whether to be vaccinated, we also take seriously our role as a public transit authority committed to the safety and well-being of our customers, employees and the communities we serve.

Sincerely,

Janice Kennefick
Janice Kennefick
Director of Human Resources

cc: Jeff Sharp – Union Representative

Our mission is to operate a safe, efficient, and reliable transportation system for the islands of Martha's Vineyard and Nantucket with a commitment to sustainability, accessibility, our port communities, and public engagement.

228 Palmer Avenue
Falmouth, MA 02540
(508) 548-5011



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority

January 24, 2022

Mr. Albert Brox
PO Box 14
Cotuit, MA 02635

Dear Mr. Brox:

We appreciate your request to be exempted from the Authority's COVID-19 Vaccination Verification Policy ("the Policy"). After consideration and review of the information and documentation that you submitted, we are unable to approve your request due to the direct threat your unvaccinated status would pose to the health and well-being of your fellow employees, our customers and/or our vendors. Due to the nature of your position as a Captain, you are expected and required to interact daily in person with your fellow employees, our customers and/or our vendors. Accordingly, we determined that an exemption from the Policy would unreasonably risk their safety as well as your own.

Your supervisor will be aware that you remain out-of-compliance with the Policy. You have three (3) calendar days from the date of this letter to get your first shot of a vaccine authorized or approved for use by the Food and Drug Administration (FDA) or the World Health Organization (WHO) or disciplinary action will commence. Your manager will also be able to provide supportive resources and review the next steps with you.

Please be assured that our decision did not come easily as we realize it may affect your employment with us. As we balance our respect for employees' decisions about whether to be vaccinated, we also take seriously our role as a public transit authority committed to the safety and well-being of our customers, employees and the communities we serve.

Sincerely,

Janice Kennefick
Director of Human Resources

cc:     Jeff Sharp – Union Representative

Our mission is to operate a safe, efficient, and reliable transportation system for the islands of Martha's Vineyard and Nantucket with a commitment to sustainability, accessibility, our port communities, and public engagement.

228 Palmer Avenue
Falmouth, MA 02540
(508) 548-5011



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority



January 24, 2022

Mr. Christopher Ovaska
PO Box 288
East Sandwich, MA  02537

Dear Mr. Ovaska:

We appreciate your request to be exempted from the Authority's COVID-19 Vaccination Verification Policy ("the Policy"). After consideration and review of the information and documentation that you submitted, we are <u>unable to approve your</u> request due to the direct threat your unvaccinated status would pose to the health and well-being of your fellow employees, our customers and/or our vendors. Due to the nature of your position as a Terminal Worker, you are expected and required to interact daily in person with your fellow employees, our customers and/or our vendors.  Accordingly, we determined that an exemption from the Policy would unreasonably risk their safety as well as your own.

Your supervisor will be aware that you remain out-of-compliance with the Policy. You have three (3) calendar days from the date of this letter to get your first shot of a vaccine authorized or approved for use by the Food and Drug Administration (FDA) or the World Health Organization (WHO) or disciplinary action will commence. Your manager will also be able to provide supportive resources and review the next steps with you.

Please be assured that our decision did not come easily as we realize it may affect your employment with us. As we balance our respect for employees' decisions about whether to be vaccinated, we also take seriously our role as a public transit authority committed to the safety and well-being of our customers, employees and the communities we serve.

Sincerely,

Janice Kennefick
Director of Human Resources

cc:     Jeff Sharp – Union Representative

Our mission is to operate a safe, efficient, and reliable transportation system for the islands of Martha's Vineyard and Nantucket with a commitment to sustainability, accessibility, our port communities, and public engagement.

228 Palmer Avenue
Falmouth, MA 02540
(508) 548-5011

# **EXHIBIT 6**



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority

January 31, 2022

Mr. Paul Menton
121 Jamie Lane
East Falmouth, MA  02536

Dear Paul:

As stated in the enclosed COVID-19 Vaccination Verification Policy for employees of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, all employees shall be fully vaccinated in accordance with the CDC definition on or before <u>February 16, 2022.</u>

As an employee refusing to be vaccinated and voluntarily resigning, you will be suspended without pay for five (5) days and then for ten (10) days and eventually terminated if you continue to refuse to get vaccinated. Your 5-day suspension will be commencing on Friday, January 28, 2022. At any point before termination, you may elect to become compliant with the Policy and get vaccinated or you may voluntarily resign and be included on the Steamship Authority's recall list.

Should there be questions, please reach out to me directly by email or by cell at 508-524-3799.

Regards,

Janice Kennefick
Director, Human Resources

Cc: Jeff Sharp, Union Representative

Our mission is to operate a safe, efficient, and reliable transportation system for the islands of Martha's Vineyard and Nantucket with a commitment to sustainability, accessibility, our port communities, and public engagement.

228 Palmer Avenue
Falmouth, MA 02540
(508) 548-5011

8:38

Done   **Tim Richardson Letter.docx**   



Woods Hole, Martha's Vineyard
and Nantucket Steamship Authority

January 11, 2022

Mr. Timothy Richardson
378 Taramac Road
Centerville, MA 02632

Dear Tim

As stated in the enclosed COVID-19 Vaccination Verification Policy for employees of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, all employees shall be fully vaccinated in accordance with the CDC definition on or before <u>February 16, 2022</u>.

As an employee refusing to be vaccinated and voluntarily resigning, you will be suspended without pay for five (5) days and then for ten (10) days and eventually terminated if you continue to refuse to get vaccinated. Your 5-day suspension will be commencing on Friday, January 28, 2022. At any point before termination, you may elect to become compliant with the Policy and get vaccinated or you may voluntarily resign and be included on the Steamship Authority's recall list.

Should there be questions, please reach out to me directly by email or by cell at 508-524-1700.

Regards,

Janice Kennefick
Director, Human Resources

Cc: Jeff Sharp, Union Representative



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority

January 31, 2022

Mr. James Bondarek
PO Box 2939
Nantucket, MA  02584

Dear James:

As stated in the enclosed COVID-19 Vaccination Verification Policy for employees of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, all employees shall be fully vaccinated in accordance with the CDC definition on or before <u>February 16, 2022.</u>

As an employee refusing to be vaccinated and voluntarily resigning, you will be suspended without pay for five (5) days and then for ten (10) days and eventually terminated if you continue to refuse to get vaccinated. Your 5-day suspension will be commencing on Friday, January 28, 2022. At any point before termination, you may elect to become compliant with the Policy and get vaccinated or you may voluntarily resign and be included on the Steamship Authority's recall list.

Should there be questions, please reach out to me directly by email or by cell at 508-524-3799.

Regards,

Janice Kennefick
Director, Human Resources

Cc:  Jeff Sharp, Union Representative

Our mission is to operate a safe, efficient, and reliable transportation system for the islands of Martha's Vineyard and Nantucket with a commitment to sustainability, accessibility, our port communities, and public engagement.

**228 Palmer Avenue**
**Falmouth, MA 02540**
**(508) 548-5011**



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority

January 31, 2022

Mr. Steven Ennis
19 Lebaron Way
Mattapoisett, MA 02739

Dear Steven:

As stated in the enclosed COVID-19 Vaccination Verification Policy for employees of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, all employees shall be fully vaccinated in accordance with the CDC definition on or before <u>February 16, 2022.</u>

As an employee refusing to be vaccinated and voluntarily resigning, you will be suspended without pay for five (5) days and then for ten (10) days and eventually terminated if you continue to refuse to get vaccinated. Your 5-day suspension will be commencing on Friday, January 28, 2022. At any point before termination, you may elect to become compliant with the Policy and get vaccinated or you may voluntarily resign and be included on the Steamship Authority's recall list.

Should there be questions, please reach out to me directly by email or by cell at 508-524-3799.

Regards,

Janice Kennefick
Director, Human Resources

Cc: Jeff Sharp, Union Representative

Our mission is to operate a safe, efficient, and reliable transportation system for the islands of Martha's Vineyard and Nantucket with a commitment to sustainability, accessibility, our port communities, and public engagement.

228 Palmer Avenue
Falmouth, MA 02540
(508) 548-5011



# Woods Hole, Martha's Vineyard and Nantucket Steamship Authority

January 31, 2022

Mr. Mark Anderson
6 Brightman Court
New Bedford, MA 02745

Dear Mark:

As stated in the enclosed COVID-19 Vaccination Verification Policy for employees of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority, all employees shall be fully vaccinated in accordance with the CDC definition on or before <u>February 16, 2022.</u>

As an employee refusing to be vaccinated and voluntarily resigning, you will be suspended without pay for five (5) days and then for ten (10) days and eventually terminated if you continue to refuse to get vaccinated. Your 5-day suspension will be commencing on Friday, January 28, 2022. At any point before termination, you may elect to become compliant with the Policy and get vaccinated or you may voluntarily resign and be included on the Steamship Authority's recall list.

Should there be questions, please reach out to me directly by email or by cell at 508-524-3799.

Regards,

Janice Kennefick
Director, Human Resources

Cc:  Jeff Sharp, Union Representative

Our mission is to operate a safe, efficient, and reliable transportation system for the islands of Martha's Vineyard and Nantucket with a commitment to sustainability, accessibility, our port communities, and public engagement.

228 Palmer Avenue
Falmouth, MA 02540
(508) 548-5011

# EXHIBIT 7

## Form For Steamship Authority (Employer) Requiring Covid-19 Injections Under Emergency Use Authorization

**NOTE TO EMPLOYER: As your employee, I request that you review this document, provide the requisite information, and sign the form, in regards to your recently implemented COVID-19 Vaccination Verification Policy, which requires that employees such as myself get a COVID-19 emergency use authorization (EUA) investigational vaccine.**

1.  Do you know where I can receive Comirnaty or SPIKEVAX, which are the only two COVID-19 injections "fully approved" by the Food and Drug Administration (FDA)? If I am able to find and do receive Comirnaty or SPIKEVAX, what can you tell me about the National Vaccine Injury Compensation Program should I be injured by the injection?

    _____

    _____

    _____

    _____

2.  If Comirnaty or SPIKEVAX are unavailable and I am forced to receive an EUA COVID-19 injection, what can you tell me about the PREP Act and my ability (or inability) to hold the pharmaceutical manufacturer(s) liable for such injury?

    _____

    _____

    _____

    _____

3.  If I agree to receive an EUA COVID-19 injection, does my health insurance plan provide complete coverage should I experience an adverse event, or even death?

    _____

    _____

    _____

4. As an employee, does my life insurance policy provide any coverage in the event that I die from receiving an EUA COVID-19 injection?

5. As an employee, will you be providing any form of compensation, disability insurance, or other resources above and beyond that which is provided for in the collective bargaining agreement applicable to my position, if I have an adverse event to an EUA COVID-19 injection and am unable to come to work for days, weeks, or months, or if I am disabled for life?

6. The FDA requires that EUA vaccine recipients be provided with certain vaccine-specific information to help them make an informed decision about vaccination. (Centers for Disease Control and Prevention. COVID-19 Vaccine Emergency Use Authorization Fact Sheets for Recipients and Caregivers. http://www.cdc.gov/vaccines/covid-19/eua/index.html) The EUA fact sheets that must be provided are specific to each authorized Covid-19 injection and are developed by the manufacturers (Pfizer/BioNTech, Moderna, and Janssen/Johnson & Johnson). The fact sheets must provide up-to-date information on the injections and their ingredients; vaccine recipients must also receive information about adverse events. Have you read, understood, and provided me (and all other employees) with these fact sheets and current information on adverse events—and can you furnish a list of vaccine ingredients guaranteed to be complete—so that I/we can make an educated decision?

_____
_____
_____
_____

7.  Have you reviewed the **material adverse events** experienced to date by people who have received EUA COVID-19 injections, reported to the Vaccine Adverse Event Reporting System (VAERS)? (https://vaers.hhs.gov) Reported adverse events include death, anaphylaxis, blood clots and related complications, leaky blood vessels and related complications, heart problems (myocarditis and pericarditis), neurological disorders, autoimmune disorders, other chronic and inflammatory conditions, blindness and deafness, infertility, fetal damage, miscarriage, and stillbirth.

_____
_____
_____
_____

8.  The FDA's guidance on emergency use authorization of medical products requires the FDA to "ensure that recipients are informed to the extent practicable given the applicable circumstances...[t]hat they have the option to accept or refuse the EUA product..." (U.S. Department of Health and Human Services. Emergency Use Authorization of Medical Products and Related Authorities: Guidance for Industry and Other Stakeholders. January 2017. https://www.fda.gov/media/97321/download) Are you aware of this statement? Have you informed all employees that they have the option to refuse?

_____
_____
_____
_____

9. With respect to the emergency use of an unapproved product, the Federal Food, Drug and Cosmetic Act, Title 21 U.S.C. 360bbb-3(e)(1)(A)(ii)(I-III) reiterates that individuals be informed of "the option to accept or refuse administration of the product, [and] of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." Given the FDA's recent approval of Comirnaty and SPIKEVAX, state legislation would be required to allow companies to mandate the COVID-19 injections. Governor Baker's Executive Order No. 595 is not legislation. Are you aware of these facts?

_____

_____

_____

_____

10. EUA products are unapproved, unlicensed, and experimental. Under the Nuremberg Code — the foundation of ethical medicine—no one may be coerced to participate in a medical experiment. The individual's consent is absolutely essential. No court has ever upheld a mandate for an EUA vaccine. In Doe #1 v. Rumsfeld, 297 F. Supp. 2d 119 (2003), a federal court held that the U.S. military could not mandate EUA vaccines for soldiers: "[T]he United States cannot demand that members of the armed forces also serve as guinea pigs for experimental drugs" (Id. at 135). Are you aware of this?

_____

_____

_____

_____

11. The United States Code of Federal Regulations and the FDA require the informed consent of human subjects for medical research. The EUA COVID-19 injections are unapproved, unlicensed, investigational vaccines that are still in their experimental stage. It is unlawful to conduct medical research on a human being, even in the event of an emergency, unless steps are taken to secure the full informed consent of all participants. Are you aware of this?

_____

_____

12. According to Federal Trade Commission (FTC) Guidelines and the FTC's "Truth In Advertising," promotional materials—and especially materials involving health-related products—cannot mislead consumers, omit important information, or express claims. All of this falls under the rubric of "deceptive advertising" (whereby a company is providing or endorsing a product), whether presented in the form of an ad, on a website, through email, on a poster, or in the mail. For example, statements such as "due to the direct threat your unvaccinated status poses to fellow employees" or "all employees are required to get the COVID-19 vaccine to make the workspace safe" or "it's safe and effective" leave out critical information. Critical information includes the facts that the available COVID-19 injections are unapproved EUA vaccines that "may" or "may not" prevent Covid, won't necessarily make the workplace safer, and could in fact cause harm. Not providing links or attachments of the manufacturers' fact sheets and current information on adverse events is omitting safety information. Are you aware of this?

13. Since the COVID lockdowns began nearly two years ago, there have been over 500 reported breaches of unsecured protected health information (PHI), incidents investigated by the Office for Civil Rights (OCR). (U.S. Department of Health and Human Services. Office for Civil Rights. Breach Portal: Notice to the Secretary of HHS Breach of Unsecured Protected Health Information. https://ocrportal.hhs.gov/ocr/breach/ breach_report.jsf;jsessionid=618E88DD94EE65D46D5785CB2A643553) These breaches exposed millions of people's personal health information. Although many of these incidents were attributed to hacking, some of the breaches to PHI fell directly under the 1996 Health Insurance Portability and Accountability Act (HIPAA), such as sharing a patient's or person's information with an unauthorized individual or incorrectly handling PHI. Can you please explain your obligations to me, under HIPAA law, with respect to your requirement that I receive this injection?

_____

_____

_____

14. Whereas pharmaceutical companies that manufacture EUA vaccines have been protected from liability related to injuries or deaths caused by experimental agents since the Public Readiness and Emergency Preparedness (PREP) Act was enacted in 2005, companies and all other institutions or individuals who mandate experimental vaccines on any human being are not protected from liability. (Congressional Research Service. The PREP Act and COVID-19: Limiting Liability for Medical Countermeasures. Updated Jan. 13, 2022. https://crsreports.congress.gov/product/pdf/LSB/LSB10443). Are you aware that you do not enjoy such liability protection?

_____

_____

_____

_____

15. Are you aware that employees could file a civil suit against you should they suffer an adverse event, death, or termination from their place of employment?

_____

_____

_____

_____

As the legally authorized officer of the employer/company, I have read all of the above information, have provided my employees with all of the information that the FDA requires be provided to recipients of the COVID-19 injections, and do hereby agree to assume 100%

financial responsibility for covering any and all expenses from adverse events, including death, through insurance coverage or directly, should employees suffer an adverse reaction attributable to any COVID-19 injections received as a requisite condition of their continued employment.

_____ _____ _____

Authorized Signatory of Steamship Authority Title/position Date

_____ _____ _____

Steamship Authority Employee Title/position Date

_____ _____ _____

Witness Title/position Date

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT
SUPERIOR COURT

BARNSTABLE, SS                                           DOCKET NO.

|  |  |
|---|---|
| CAPTAIN ALBERT BROX et al.,<br><br>        Plaintiffs<br><br>v.<br><br>THE WOODS HOLE, MARTHA'S VINEYARD,<br>AND NANTUCKET STEAMSHIP<br>AUTHORITY and another,<br><br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **PLAINTIFFS' *EX-PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER**

### **EXPEDITED CONSIDERATION REQUESTED**

NOW COME the Plaintiffs, Captain Albert Brox et al., by and through their undersigned

counsel, and hereby move this Honorable Court, pursuant to Massachusetts Rules of Civil

Procedure Rule 65, to issue a Temporary Restraining Order ("TRO") (*ex parte*), **immediately**

enjoining Defendants from terminating Plaintiffs' employments and further enforcing their

COVID-19 vaccine mandate Policy as against Plaintiffs.

Expedited consideration is necessary because the harm to Plaintiffs is occurring now, and

it is irreparable. Defendants have stated that it is their intent to permanently terminate Plaintiffs'

employments on February 16, 2022, if they have not submitted to COVID-19 vaccinations

before that date. Plaintiffs will suffer irreparable harm to fundamental constitutional rights,

which rights—including Plaintiffs' rights to their free exercise of religion—may be forever

compromised in the absence of an immediate determination of Plaintiffs' requests. This harm is set forth in greater detail in the accompanying Memorandum and is supported by the allegations contained in Plaintiffs' Verified Complaint, filed herewith.

Accordingly, Plaintiffs request that the Court <u>immediately issue the requested TRO</u> (*ex parte*) to maintain the status quo, then set an expedited schedule for briefing on the separate but related request for a preliminary injunction, at which time counsel for Defendants will have the opportunity to respond in full. <u>Time is of the essence</u>.

Pursuant to Rule 65(a) of the Massachusetts Rules of Civil Procedure, the Honorable Court should issue the requested TRO immediately and without further notice to any party for all the reasons stated herein, in the attached Memorandum in Support, and in Plaintiffs' Verified Complaint.

Plaintiffs were notified of Defendants' rejection of Plaintiffs' religious accommodation requests on January 24, 2022. Plaintiffs obtained legal counsel in the evening of Friday, January 28, 2022, and this lawsuit was filed on Friday, February 11, 2022.

For all the reasons stated in the attached Memorandum in Support, Plaintiffs respectfully request that this Honorable Court grant their Motion and issue a Temporary Restraining Order against Defendants as outlined in the attached proposed order.

Respectfully Submitted:

Captain Albert Brox et al.,
By Plaintiffs' Counsel

Patrick K. Daubert, Esq.
BBO#: 694802
Daubert Law, PLLC
100 Independence Dr.
Suite 7-591
Hyannis, MA 02601
Tel: (508) 205-4350
DaubertLaw@iCloud.com

Dated:  February 11, 2022

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT
SUPERIOR COURT

BARNSTABLE, SS                                                DOCKET NO.

                                              )
CAPTAIN ALBERT BROX et al.,                   )
                                              )
              Plaintiffs                      )
                                              )
v.                                            )
                                              )
THE WOODS HOLE, MARTHA'S VINEYARD,            )
AND NANTUCKET STEAMSHIP                        )
AUTHORITY et al.,                             )
                                              )
              Defendants                      )
                                              )

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER**

**ISSUE PRESENTED**

Whether Defendants' policy that all employees must be vaccinated and the denial of

Plaintiffs' requests for religious exemption and reasonable accommodation violates Plaintiffs'

statutory and constitutional rights guaranteed by the United States and Commonwealth of

Massachusetts Constitutions, thereby causing irreparable harm sufficient to warrant the requested

injunctive relief.

**INTRODUCTION**

Pursuant to Rule 65 of the Massachusetts Rules of Civil Procedure, Plaintiffs seek a

Temporary Restraining Order ("TRO") and preliminary injunction to immediately enjoin the

enforcement of Defendants' COVID-19 Vaccination Verification Policy, which requires Plaintiffs

to submit to COVID-19 vaccination as a condition of continued employment by February 16, 2022, or else face termination. More specifically, Plaintiffs seek the following:

- An Order that Defendants are enjoined from enforcing their "COVID-19 Vaccination Verification Policy" against Plaintiffs or taking any adverse action against Plaintiffs because of their vaccination status.

- An Order requiring Defendants to reinstate Plaintiffs to their respective employment statuses as they existed prior to Defendants' placement of Plaintiffs on unpaid suspension on January 28, 2022.

- As reasonable accommodations, an Order that Plaintiffs shall submit to reasonable, weekly testing for COVID-19 to be provided by Defendants.[1]

## STATEMENT OF FACTS

This case seeks to protect and vindicate statutory and fundamental constitutional rights. Plaintiffs bring this civil rights action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for other statutory and constitutional violations, including violations of the Constitution of the Commonwealth of Massachusetts and Declaration of Rights of the Inhabitants thereof, challenging Defendants' acts, policies, practices, customs and procedures, which deprived Plaintiffs of their First Amendment rights, their rights to Due Process, and their Fourteenth Amendment rights to liberty, privacy, self-autonomy and personal identity, including the right to reject government mandated medical treatment. Defendants unjustly discriminate against Plaintiffs because of their sincerely held religious beliefs and convictions by mandating that they must take a COVID-19 vaccine as a condition of continued

---

[1] A proposed TRO has been submitted with this Memorandum.

employment. Specifically, Defendants' vaccine mandate seeks to override Plaintiffs' sincerely held religious beliefs, convictions and viewpoints and discriminates against them on the basis of their religions.

As set forth in the Verified Complaint, the policies, practices, customs and procedures of Defendants (the "Authority") were the cause of, and the moving force behind, the statutory and constitutional violations in this case.

Plaintiff Albert Brox has worked for the Authority for over 32 years, attaining the rank of Captain in 1992 and presently is the Senior Captain of the MV Iyanough, the Authority's high-speed ferry. Plaintiff Kim Fernandes has worked for the Authority for more than 29 years as a Parking Lot Cashier. Plaintiff James Bondarek has worked for the Authority for over 32 years and his present posting is Purser. Plaintiff Andrea Sheedy has worked for the Authority for over 25 years as a Ticket Seller. Plaintiff Paul Menton has worked for the Authority for over 24 years, who is employed as a Pilot and previously as an able-bodied seaman. Plaintiff Christopher Ovaska has worked for the Authority for over 7 years as a Terminal Worker. Plaintiff Mark Anderson has worked for the Authority for over 4 years as an able-bodied seaman and Pilot. Plaintiff Tim Richardson has worked for the Authority for over 4 years as an Oiler. Plaintiff Steven Ennis has worked for the Authority for over 1 year as an Oiler. Plaintiff Sonia Simoneau has worked for the Authority for over 24 years as a Ticket Seller. Plaintiff Jeffery D'Amario has worked for the Authority for over 32 years as a Ticket Seller.

Plaintiffs Brox, Fernandes, Bondarek, Sheedy, Menton, Ovaska, Anderson, Simoneau, Richardson and Ennis are Christians who adhere to the teachings of the Bible and are morally bound to follow the universal, consistent moral teaching of the Christian faith. Plaintiffs find

their dignity, personal identity, and autonomy in the exercise of their sincerely held religious beliefs. Plaintiffs are devoted Christian people who sincerely believe the Bible's teachings and sincerely hold Christian beliefs that preclude them from taking the available COVID-19 vaccines.

Plaintiff D'Amario practices nature worship, which has taught him to be skeptical of conventional practices regarding diet and allopathic medical treatments. D'Amario sincerely believes his worship of nature, his practice of vegetarianism, and his use of natural, homeopathic medicines and remedies keep him healthy. These sincere beliefs preclude him from taking the available COVID-19 vaccines.

Plaintiffs do not oppose or demean any person for the personal medical decisions he or she makes. Plaintiffs oppose one-size-fits-all medical mandates now being forced upon them by their employer on pain of losing their employment, and the resulting violation of Plaintiffs' statutory and constitutional rights. Plaintiffs are all willing to take other preventative measures, such as weekly testing, masking, etc., and other such reasonable accommodations required or requested by Defendants.

Plaintiff Ennis submitted to the COVID-19 vaccination procedure following the denial of his requests for religious and medical exemption and reasonable accommodation and after his placement on unpaid suspension. Ennis submitted to the vaccine in violation of and direct opposition to his sincerely held religious beliefs, causing him irreparable harm. In addition to suffering irreparable harm from Defendants' coercing Ennis into taking the COVID-19 vaccine in order to avoid being terminated, thus causing irreparable, permanent injury to his

constitutional right to freely exercise his religion, Ennis suffered an adverse neurological reaction to the vaccine, which he is currently treating with the help of his physician.

Defendants adopted a policy, practice, custom and procedure on December 13, 2021, requiring and forcing Plaintiffs to take one of the COVID-19 vaccines by January 5, 2022 or become subject to progressive disciplinary measures that escalate to termination by February 16, 2022. Defendants' policies, practices and procedures force Plaintiffs to take the vaccine in direct opposition to, and in violation of, Plaintiffs' personal identity, autonomy, and their sincerely held religious beliefs and convictions, in violation of federal and state statutes and constitutional provisions.

Despite Defendants' adoption of the vaccine mandate policy on December 13, 2021, Defendants did not disclose this policy to Plaintiffs or Defendants' employees at large until late in the afternoon on January 3, 2022. This delay afforded Plaintiffs scant opportunity to draft and submit requests for religious exemption and reasonable accommodation to Defendants by January 5, 2022, when they became due or functionally were waived as in the case of Plaintiffs Simoneau and D'Amario. Notwithstanding the unacceptably short window for submission of such exemption requests, nine of eleven Plaintiffs (Brox, Fernandes, Bondarek, Sheedy, Menton, Ovaska, Anderson, Richardson and Ennis) did submit exemptions in timely fashion. Plaintiffs' exemption requests articulated their sincerely held religious beliefs and explained to Defendants why these sincerely held beliefs prevented them from taking the COVID-19 vaccines.

Defendants went through the motion of evaluating Plaintiffs' exemption requests before summarily rejecting them nineteen days later with the distinctly non-definitive "unable to approve [their] request[s]" language, which appeared in Defendant Kennefick's January 24, 2022

letters. Kennefick stated during the post-five-day-suspension hearing with Plaintiff Mark Anderson on February 3, 2022, that the criteria for evaluating religious exemption and reasonable accommodation requests was whether the employee could maintain six feet of social distance at all times while performing his or her duties. See Affidavit of Mark Anderson attached hereto as Exhibit A. As such, the solicitation of religious exemption requests was at best a token formality, and at worst a ploy to identify conscientious objectors to the vaccination policy and weed them out of the Authority's ranks of employees with termination. On January 31, 2022, Kennefick notified Plaintiffs of their retroactive placement on unpaid suspension, effective January 28, 2022.

Plaintiffs now seek this emergency relief to prevent the irreparable harm of being terminated for their sincerely held religious beliefs, or alternatively, violating such sincerely held religious beliefs by being coerced into taking the COVID-19 vaccines in order to avoid being terminated on February 16, 2022.

## ARGUMENT

### I.    Standard for Issuing a TRO/Preliminary Injunction

"The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the *status quo*." Reid v. Hood, Case No. 1:10CV2842, U.S. N.D. Ohio, at 4-5 (2011) (citing Motor Vehicle Bd. of Cal. v. Orrin W. Fox, et al., 434 U.S. 1345, 1347, n. 2 (1977)). The standard for seeking a preliminary injunction is well-established. "A plaintiff seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that

the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008); see also Packaging

Industries Group, Inc. & another vs. Paul E. Cheney, 380 Mass. 609, 617 (1980).

Plaintiffs satisfy each of these elements and the main thrust of this motion is to maintain

the *status quo*, namely, enjoin Defendants from terminating Plaintiffs' employments in violation

of their sincerely held religious beliefs and fundamental constitutional rights, and to order

Defendants to reinstate Plaintiffs to their positions under the same accommodations (masking

and weekly testing) that Defendants, by their own policy, deemed acceptable just two weeks ago.

## II.     Plaintiffs Satisfy the Standard for Granting the Requested Temporary and Preliminary Injunctive Relief

### A.     Plaintiffs' Likelihood of Success on the Merits

While Plaintiffs are only required to demonstrate a likelihood of success on the merits of

one of their Counts, Plaintiffs believe they have a strong likelihood of success on the merits of all

counts in their Complaint.

### 1.     Counts I & II - Free Exercise of Religion Violations

The United States and Commonwealth of Massachusetts Constitutions require the

government to regulate with precision, most particularly when impacting fundamental

constitutional rights. As stated by the Supreme Court:

> In pursuing this important interest, the State cannot choose means that
> unnecessarily burden or restrict constitutionally protected activity. Statutes
> affecting constitutional rights must be drawn with "precision"...and must be
> "tailored" to serve their legitimate objectives...And if there are other, reasonable
> ways to achieve these goals with a lesser burden on constitutionally protected
> activity, a State may not choose the way of greater interference. If it acts at all, it
> must choose "less drastic means."

<u>Dunn v. Blumstein</u>, 405 U.S. 330, 343 (1972); see also <u>Aptheker v. Sec. of State</u>, 378 U.S. 500,

508 (1964) ("Even though the governmental purpose be legitimate and substantial, that purpose

cannot be pursued by means that broadly stifle fundamental personal liberties when the end can

be more narrowly achieved. The breadth of legislative abridgement must be viewed in the light

of less drastic means for achieving the same basic purpose") (quoting <u>NAACP v. Ala.</u>, 377 U.S.

288, 307-08 (1964)).

 "The principle that government may not enact laws that suppress religious belief or

practice is…well understood." <u>Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah</u>, 508

U.S. 520, 523 (1993) ("<u>Lukumi</u>"). In <u>Bible Believers v. Wayne County</u>, 805 F.3d 228 (6th Cir.

2015), the *en banc* court stated:

> The right to free exercise of religion includes the right to engage in conduct that is
> motivated by the religious beliefs held by the individual[s] asserting the claim…
> the Government cannot prohibit an individual from engaging in religious conduct
> that is protected by the First Amendment…

<u>Id</u>. at 255-56.

 The right to religious freedom is guaranteed by two provisions of the Massachusetts

Declaration of Rights, namely Art. 2 ("No subject shall be hurt, molested, or restrained, in his

person, liberty, or estate, for worshipping God in the manner and season most agreeable to the

dictates of his own conscience; or for his religious profession or sentiments; provided he doth not

disturb the public peace, or obstruct others in theire religious worship") and Art. 18, § 1, as

amended by Art. 46 ("No law shall be passed prohibiting the free exercise of religion").

 A law that discriminates against religious practices or beliefs usually will be invalidated

because it is the rare law that can be "justified by a compelling interest and is narrowly tailored

to advance that interest." Lukumi, 508 U.S. at 553. In Lukumi, for example, the Court struck down on free exercise grounds a law that prohibited animal sacrifice. The law permitted some animal killings as "necessary," but deemed the ritual, religious killing of an animal as unnecessary and thus criminal, in violation of the Free Exercise Clause. Id. Under the Commonwealth of Massachusetts Constitution, any law that substantially burdens religious exercise must satisfy strict scrutiny. See Randall Trapp & another v. Gary Roden & others, 473 Mass. 210, 214-19 (2015) (where Plaintiff established that Defendants' closure of the lodge where Plaintiff worshipped constituted a substantial burden on Plaintiff's free exercise, Defendants' health concerns about the lodge failed to demonstrate more than speculative evidence that the closure was in furtherance of a compelling government interest and the least restrictive means of furthering such interest).

When evaluating Plaintiffs' free exercise claim, it is not the government's nor the Court's role to question the validity of Plaintiffs' religious convictions. As stated by the United States Supreme Court, "Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation." Thomas v. Review Bd., 450 U.S. 707, 716 (1981). Consequently, Plaintiffs' deeply held religious convictions that compel them not to receive COVID-19 vaccines are beyond question by the government or this Court. The religious convictions requiring Plaintiffs to adhere to their faiths are also beyond the function of this Court (or a public instrumentality such as the Authority) to question.

Defendants cannot meet the rigorous standard of strict scrutiny in demonstrating that their blanket denials of Plaintiffs' religious exemption and accommodation requests utilized the least restrictive means to achieve a compelling governmental interest. This is apparent from Defendants' own conduct. Defendants are not requiring that all passengers aboard their vessels receive the vaccine, no matter if such passengers may be aboard the vessels for multiple hours per day, indoors in close quarters with employees and others at all times. Defendants' own language in their denial of exemption letters betrays the supposed logic of their vaccine mandate in labeling Plaintiffs "direct threat[s]…to the health and well-being of…fellow employees" due to Plaintiffs' "unvaccinated status[es]". Defendants are in fact conceding that it is their position and/or belief that unvaccinated persons pose direct threats to the vaccinated. Not only is this position entirely bereft of scientific support, but it undresses Defendants' policy to reveal that the compelling interest they purport to be serving is protecting persons vaccinated against a pathogen from colleagues not vaccinated against that pathogen by requiring those who are not vaccinated to submit to the vaccination procedure in order to protect those who are already protected.

Further, it is difficult to comprehend how Defendants in this matter have such a compelling interest in forced vaccination as to deny all religious exemption and reasonable accommodation requests, but another public body, the City of Boston, has approved 41% of the religious exemptions sought by its employees.[2] If other public employers of the Commonwealth

_____

[2] "Boston rejects most requests for waivers from vaccine mandate for city employees", WBUR, February 7, 2022. "Boston has approved 41% of the 155 requests it has reviewed so far. Boston said it has yet to process the rest of the remaining 205 requests. The city provided the figures in response to a public records request from WBUR." https://www.wbur.org/news/2022/02/07/boston-vaccine-mandate-approval

do not have a compelling interest to deny all religious exemption and reasonable accommodation requests, then neither do Defendants.

Indeed, because Defendants provided a medical exemption to the COVID-19 vaccine, the First Amendment *demands* a religious exemption as well. The Sixth Circuit held:

> A double standard is not a neutral standard. See Fraternal Order of Police Newark Lodge No. 12 v. City of Newark, 170 F.3d 359, 365-367 (3d Cir.1999) (Alito, J.) (invalidating a police department policy that barred officers from growing beards and holding that the policy could not take refuge in the Smith safe harbor because it excepted officers who could not shave for medical reasons but not officers who could not shave for religious reasons).

Ward v. Polite, 667 F.3d 727, 740 (6th Cir. 2012). If Defendants can provide secular medical accommodations, then they *must* be required to provide religious accommodations.

Finally, Defendants' conduct is not utilizing the least restrictive means. For example, Defendants' Policy provides that anyone who is awaiting decision on request for religious or medical exemption and reasonable accommodation must adhere to the following rules: to wear a mask while in close contact with other individuals in the workplace and to provide proof of a negative polymerase chain reaction ("PCR") test to the Human Resources Department at the beginning of each work week at the employee's own expense. This accommodation, proposed and required by Defendants during the pendency of exemption and accommodation requests, honored Plaintiffs' First Amendment rights while utilizing less restrictive means to accomplish the Policy's stated goal of preventing the spread of COVID-19. Defendants should reinstate this Policy and abandon their one-size-fits-all vaccine mandate.

The challenged conduct violates Plaintiffs' rights to the free exercise of religion because Defendants do not have a compelling interest in requiring COVID-19 vaccination with no

religious accommodations, and Defendants have not utilized the least restrictive means to accomplish their goal. Therefore, Plaintiffs are likely to succeed on their free exercise claims.

### 2.      Count III - Religious Discrimination Under G.L. c. 151B, § 4

Defendants offered employees the opportunity to seek religious exemption and accommodation requests from Defendants' COVID-19 vaccine mandate policy. Plaintiffs took that opportunity and applied for religious exemptions. At that point, what Defendants were required to do as a public employer pursuant to G.L. c. 151B was: (1) determine whether Plaintiffs had sincerely-held religious beliefs; and (2) enter into a good faith, interactive process with Plaintiffs to determine whether they could accommodate Plaintiffs' religious practices and observances without incurring significant difficulty or expense.

Instead, Defendants conducted a *pro forma* telephone interview, did not attempt to determine whether any reasonable accommodations were available, suspended Plaintiffs without pay, and now intend to terminate Plaintiffs' employments *en masse* on February 16, 2022 (with the exception of Plaintiff Ennis who succumbed to the vaccine mandate Policy in violation of his sincerely held religious convictions). In effect, Defendants invited Plaintiffs to identify themselves as persons whose sincerely-held religious beliefs barred them from receiving the COVID-19 vaccination, and then, in response, scheduled Plaintiffs for termination.

Plaintiffs have suffered irreparable harm, as outlined and incorporated in the above strict scrutiny and irreparable harm analysis, because Defendants failed to determine whether they could reasonably accommodate Plaintiffs' religious beliefs. The harm to Plaintiffs is at least two-fold: they have lost both their religious freedoms and the benefits of their employment (in the form of unpaid suspensions and imminent, pending termination). Of the two harms, the first—the

loss of a constitutionally guaranteed right—is irreparable. The Supreme Court of the United

States has held that "[t]he loss of First Amendment freedoms, even for minimal periods of time,

unquestionably constitutes irreparable injury." Roman Catholic Diocese of Brooklyn v. Cuomo,

141 S.Ct. 63, 67 (2020), quoting Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion).

This principle applies notwithstanding the challenge that COVID-19 poses to public health:

"Even in a pandemic, the Constitution cannot be put away and forgotten." Id. at 68.

Sub-sections 1 and 1A of section 4 of chapter 151B prohibit employers from

discriminating on the basis of religion. Plaintiffs are likely to succeed on the merits because

Defendants failed to take the steps that Chapter 151B, their own Policy, and Governor Baker's

Executive Order No. 595 ("EO 595") require. To establish a *prima facie* case of religious

discrimination, Plaintiffs need to show that the employer imposed a requirement that would have

caused Plaintiffs to violate their religious practices, and that Plaintiffs informed their employer of

same. There can be no dispute that Plaintiffs completed and submitted religious exemption

requests on the forms provided by Defendants. In Brown v. F.L. Roberts & Co., 452 Mass. 674,

676-77 (2008), the Court held:

> If the employee makes this *prima facie* case, the burden then shifts to the employer
> to prove that accommodation of the employee's religious obligations would
> impose…an undue hardship pursuant to the statute…In determining whether an
> employer has met its burden of proving undue hardship, the focus is on the
> particular nature and operations of its business…Moreover, an employer's mere
> contention that it could not reasonably accommodate an employee is insufficient.

As the Supreme Judicial Court made clear in Brown, Chapter 151B requires that the employer

prove the requested accommodations would impose an undue hardship. Presumably that is why

EO 595 encourages Defendants, to adopt a procedure to allow "limited exemptions from the

vaccination requirement where a reasonable accommodation can be reached for any employee…

who is unwilling to receive COVID-19 vaccination due to a sincerely held religious belief",
which Defendants did—or purported to—adopt in their vaccination mandate Policy. But
Defendants did not even try to determine whether "reasonable accommodation[s] [could] be
reached" for Plaintiffs.

Importantly, this is not an instance of an employer contending that the interactive process
would be futile because any accommodation would impose an undue burden. If that were the
case, Defendants would not have invited employees to request religious exemptions in the first
place or bothered with soliciting follow-up information regarding certain Plaintiffs' religious
beliefs in a supplemental form. "There is no obligation to undertake an interactive process if an
employer can conclusively demonstrate that all conceivable accommodations would impose an
undue hardship on the course of its business." Massachusetts Bay Transp. Auth. v. Massachusetts
Comm'n Against Discrimination, 450 Mass. 327, 342 (2008). If Defendants were of that opinion,
then the exemption process in its entirety would be a sham, nothing more than a ruse for getting
employees with the "wrong" sort of religious beliefs to out themselves.

Here, two facts prove that reasonable accommodations existed. First, Defendants would
not have established an exemption application process. Absent any reasonable accommodations,
the process would have been no more than a charade. Second, the accommodations Plaintiffs
requested were the very accommodations that Defendants required of Plaintiffs during the
pendency of their exemption requests from on or about January 5, 2022, until January 24, 2022.

Having offered the possibility of providing reasonable accommodations, Defendants had
a duty to interact with Plaintiffs in good faith. "Both the employer and the employee must
approach the accommodation process in good faith." Finlan v. Verizon New England, Inc., 74

Mass.App.Ct. 1127 (2009) (unpublished opinion cited for persuasive value only), citing Russell

v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 457 (2002). The failure to definitively deny

Plaintiffs' requests, with the ambiguous "unable to approve [their] request[s]" language, further

demonstrates the dearth of good faith on Defendants' part.

### 3.     Count IV - Right to Privacy, Personal Autonomy, and Personal Identity Under the Fourteenth Amendment

The United States Supreme Court established the fundamental right to personal autonomy

and identity in Obergefell v. Hodges, 576 U.S. 644, 135 S.Ct. 2584 (2015) when the Court held:

> Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. See Duncan v. Louisiana, 391 U.S. 145, 147-149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). *In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs*. See, e.g., Eisenstadt v. Baird, 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); [135 S.Ct. 2598] Griswold v. Connecticut, 381 U.S. 479, 484-486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).
>
> The identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution. That responsibility, however, "has not been reduced to any formula." Poe v. Ullman, 367 U.S. 497, 542, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting). Rather, it requires courts to exercise [192 L.Ed.2d 624] reasoned judgment in identifying interests of the person so fundamental that the State must accord them its respect. See ibid. That process is guided by many of the same considerations relevant to analysis of other constitutional provisions that set forth broad principles rather than specific requirements. History and tradition guide and discipline this inquiry but do not set its outer boundaries.

Id. at 2597-98 (emphasis added).

While the Plaintiffs in Obergefell found their personal identity in their sexual orientation,

Plaintiffs in this case find theirs in religious faith. Plaintiffs' beliefs inform all of their decisions

and are central to their personal autonomy. Defendants' vaccine requirement violates Plaintiffs'

rights to their own personal identity and personal autonomy. Indeed, one of the most intimate choices a person can make is the determination of what medical procedures one may undergo or what medications one may take. Defendants' conduct infringes on Plaintiffs' rights and thus is subject to a strict scrutiny analysis.

> The Seventh Circuit of Appeals, citing the United States Supreme Court, held:

> Because any medical procedure implicates an individual's liberty interests in personal privacy and bodily integrity, *the Supreme Court has indicated that there is "a general liberty interest in refusing medical treatment."* Cruzan v. Director, Mo. Dep't of Health, 497 U.S. 261, 278 (1990) (citing Vitek v. Jones, 445 U.S. 480, 494 (1980); Parham v. J.r., 442 U.S. 584, 600 (1979)); see also Cruzan, 497 U.S. at 309 (Brennan, J., dissenting) ("The right to be free from unwanted medical attention is the right to evaluate the potential benefit of treatment and its possible consequences according to one's own values and to make a personal decision whether to subject oneself to the intrusion"). In this case, the defendant was not allowed to refuse medical treatment or to determine the course of his own care.

U.S. v. E. Husband, 226 F.3d 626, 632 (7th Cir. 2000) (emphasis added). In this case, Defendants have infringed on Plaintiffs' liberty interests in refusing medical treatment. Because the right to personal privacy, bodily integrity, and personal autonomy are fundamental, Defendants' actions require a strict scrutiny analysis.

Plaintiffs incorporate the same strict scrutiny analysis outlined above which demonstrates that Defendants do not have a compelling interest and are not using the least restrictive means. Therefore, Defendants have violated Plaintiffs' right to personal identity and autonomy, and are likely to succeed on the merits.

**B.      Irreparable Harm to Plaintiffs without the TRO/Preliminary Injunction**

The loss of a constitutional right, "for even [a] minimal period[] of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). As stated by the Sixth

Circuit, "[w]hen reviewing a motion for preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury *is mandated*." Bonnell v. Lorenzo, 241 F.3d 800, 809 (6th Cir. 2001) (emphasis added); see also Newsome v. Norris, 888 F.2d 371, 378 (6th Cir. 1989) ("The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief") (citing Elrod); see also T&D Video, Inc. vs. City of Revere et al., 423 Mass. 577, 582 (1996) (infringement of Plaintiff's First Amendment rights constituted irreparable harm).

Because "a constitutional right is being threatened or impaired" in this case, "a finding of irreparable injury is mandated."

### C.     Whether Granting the TRO/Preliminary Injunction Will Cause Substantial Harm to Others

In this case, the likelihood of irreparable harm to Plaintiffs is substantial. In fact, such a finding is "mandated." See *supra*. Moreover, Plaintiffs were adhering and will again to mask-wearing and testing measures recommended by the U.S. Centers for Disease Control and Prevention, thereby mitigating the harm to Defendants' objectives. Further, Plaintiffs are willing to comply with any reasonable alternative measures proposed or required by Defendants. Indeed, as noted above, it is the government that has the burden of justifying the challenged restrictions on Plaintiffs' fundamental liberties protected by the United States and Commonwealth of Massachusetts Constitutions.

Providing religious accommodations will not cause substantial harm to others because less restrictive measures, such as testing and mask-wearing, can be implemented. Apparently

other public bodies in the Commonwealth believe that these less restrictive measures are sufficient, and COVID-19 is the same whether in Cape Cod Harbor or Boston proper.

In the final analysis, the irreparable harm to Plaintiffs' rights outweighs the harms to Defendants' objectives. Defendants are not harmed by this Court's granting of the proposed TRO which stays Defendants' hands from terminating some of its most senior, experienced and valued employees.

### D.     The Impact of the TRO/Preliminary Injunction on the Public Interest

It is always in the public interest to prevent the violation of a party's constitutional rights. G&V Lounge, Inc. v. Michigan Liquor Control Commn., 23 F.3d 1071, 1079 (6th Cir. 1994).

In addition to all the reasons outlined above, it is in the public interest to issue the TRO/ preliminary injunction to preserve constitutional rights.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion.

Respectfully Submitted:

Captain Albert Brox et al.,
By Plaintiffs' Counsel

Patrick K. Daubert, Esq.
BBO#: 694802
Daubert Law, PLLC
100 Independence Dr.
Suite 7-591
Hyannis, MA 02601
Tel: (508) 205-4350
DaubertLaw@iCloud.com

Dated:  February 11, 2022

# EXHIBIT A

### Affidavit of Plaintiff Mark Anderson

1. My name is Mark Anderson. I have been an employee of the Steamship Authority for over 4 years.
2. I was put on unpaid suspension on January 28, 2022. I had my "hearing" following five days of unpaid suspension with Director of Human Resources Janice Kennefick on February 3, 2022.
3. At the outset, I asked Kennefick whether I could record the hearing, since we were discussing my potential termination and other important terms of my employment. Kennefick appeared shocked by my suggestion and refused to allow me to record it.
4. I took copious, contemporaneous notes of what transpired in light of her refusal to allow me a recording of the events.
5. I asked Kennefick if I could appeal my religious exemption and reasonable accommodation request's denial. She stated that was not what this hearing was for.
6. I asked Kennefick why her January 24, 2022 letter did not address the merits of my religious exemption request. Kennefick refused to agree that her letter hadn't addressed the merits. But she did say that the fact I can't social distance at all times while performing my job is what the denial was based on.
7. I believe that Kennefick and Steamship Authority management knew all along that I would not be able to social distance at all times while performing my job. I believe that Steamship Authority used false pretenses to solicit my request for religious exemption and reasonable accommodation.
8. Kennefick stated that the Steamship Authority used a third party to evaluate the religious exemption and reasonable accommodation requests. She stated that the law firm the Steamship Authority hired was Morgan, Brown & Joy.
9. I am deeply troubled and distraught by the prospect of abandoning and violating my sincerely held religious beliefs, convictions and conscience, because I will have to take the COVID-19 vaccine in order to keep my job. But I may have no choice.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY,

_____          _____
Mark Anderson                                    (February 11, 2022)

# Exhibit B

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss.                                    SUPERIOR COURT
                                                  CIVIL ACTION NO. 2272-CV-00049

---

CAPTAIN ALBERT BROX, et al.,

        Plaintiffs,

v.

THE WOODS HOLE, MARTHA'S
VINEYARD, AND NANTUCKET
STEAMSHIP AUTHORITY, et al.,

        Defendants.

---

TO:   Civil Clerk of the Superior Court
      Barnstable County Superior Court
      3195 Main Street, Superior Court Building
      Barnstable, Massachusetts 02630

## **NOTICE OF FILING OF NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, a Notice of

Removal (with attachments hereto) and a Notice to Counsel of Removal of Action to Federal

Court are being filed this day with the Clerk of the United States District Court for the District of

Massachusetts.  Copies of Said Notice of Removal and a Notice to Counsel of Removal are

attached hereto as Exhibits 1 and 2, respectively.

Defendants in the above-entitled action, The Woods Hole, Martha's Vineyard and

Nantucket Steamship Authority, and Janice Kennefick, in her official capacity as Director of

Human Resources at The Woods Hole, Martha's Vineyard and Nantucket Steamship Authority,

upon the filing of the Notice of Removal and this Notice, has effected this removal in accordance

with 28 U.S.C. § 1446(d).  This Court is respectfully requested to proceed no further with this

action unless and until the case is remanded by order of the United States District Court.

Respectfully submitted,

DEFENDANTS

THE WOODS HOLE, MARTHA'S
VINEYARD AND NANTUCKET
STEAMSHIP AUTHORITY, AND JANICE
KENNEFICK, IN HER OFFICIAL
CAPACITY AS DIRECTOR OF HUMAN
RESOURCES AT THE WOODS HOLE,
MARTHA'S VINEYARD AND
NANTUCKET STEAMSHIP AUTHORITY

By their Attorneys,

*/s/ Ryan W. Jaziri*
Keith H. McCown (BBO #322980)
kmccown@morganbrown.com
Ryan W. Jaziri (BBO #681512)
rjaziri@morganbrown.com
Jeffrey T. Collins (BBO #640371)
jcollins@morganbrown.com
MORGAN, BROWN & JOY, LLP
200 State Street, 11th floor
Boston, MA  02109
T: (617) 523-6666
F: (617) 367-3125

Dated:  February 14, 2022

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel for Plaintiff via e-mail and first-class U.S. mail on February 14, 2022 at:

Patrick K. Daubert, Esq. (BBO #694802)
Daubert Law, PLLC
100 Independent Drive
Suite 7-591
Hyannis, MA 02601
DaubertLaw@iCloud.com

*/s/ Ryan W. Jaziri*
Ryan W. Jaziri

# Exhibit C

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss.

SUPERIOR COURT
CIVIL ACTION NO. 2272-CV-00049

---

CAPTAIN ALBERT BROX, et al.,

        Plaintiffs,

v.

THE WOODS HOLE, MARTHA'S
VINEYARD, AND NANTUCKET
STEAMSHIP AUTHORITY, et al.,

        Defendants.

---

TO:   Patrick K. Daubert, Esq. (BBO #694802)
      Daubert Law, PLLC
      100 Independent Drive
      Suite 7-591
      Hyannis, MA 02601
      DaubertLaw@iCloud.com

## <u>NOTICE TO COUNSEL OF REMOVAL OF ACTION</u>

PLEASE TAKE NOTICE that Defendants in the above-entitled action, The Woods Hole,

Martha's Vineyard and Nantucket Steamship Authority, and Janice Kennefick, in her official

capacity as Director of Human Resources at The Woods Hole, Martha's Vineyard and Nantucket

Steamship Authority ("Defendants") have today filed in the United States District Court of the

District of Massachusetts, its Notice of Removal ("Notice") of the above-captioned matter from

the Superior Court for Barnstable County to the United States District Court for the District of

Massachusetts (a copy of said Notice is being served contemporaneously), together with copies

of the Verified Complaint for Temporary Restraining Order, Preliminary and Permanent

Injunctive Relief, and Declaratory Relief, filed by the Plaintiffs in the Superior Court for

Barnstable County.

You are also advised that said Defendants, upon filing said Notice, filed a Notice of

Filing of Removal of Action to Federal Court with the Clerk for the Superior Court for

Middlesex County and attached thereto copies of the following (1) Notice of Removal with

exhibits attached thereto; and (2) this Notice to Counsel of Removal of Action to Federal Court.

Such action has effected the removal of this action to the United States District Court for the

District of the Massachusetts, in accordance with the provisions of 28 U.S.C. §§ 1441 and 1446,

and no further proceedings may be had in this state court action.

<div style="margin-left: 40%;">

Respectfully submitted,

DEFENDANTS

THE WOODS HOLE, MARTHA'S
VINEYARD AND NANTUCKET
STEAMSHIP AUTHORITY, AND JANICE
KENNEFICK, IN HER OFFICIAL
CAPACITY AS DIRECTOR OF HUMAN
RESOURCES AT THE WOODS HOLE,
MARTHA'S VINEYARD AND
NANTUCKET STEAMSHIP AUTHORITY

By their Attorneys,

*/s/ Ryan W. Jaziri*
Keith H. McCown (BBO #322980)
kmccown@morganbrown.com
Ryan W. Jaziri (BBO #681512)
rjaziri@morganbrown.com
Jeffrey T. Collins (BBO #640371)
jcollins@morganbrown.com
MORGAN, BROWN & JOY, LLP
200 State Street, 11th floor
Boston, MA  02109
T: (617) 523-6666
F: (617) 367-3125

</div>

Dated:  February 14, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon counsel for Plaintiff via e-mail and first-class U.S. mail on February 14, 2022 at:

Patrick K. Daubert, Esq. (BBO #694802)
Daubert Law, PLLC
100 Independent Drive
Suite 7-591
Hyannis, MA 02601
DaubertLaw@iCloud.com

*/s/ Ryan W. Jaziri*
Ryan W. Jaziri